1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    KATHLEEN R. HARTNETT (314267)
3   (khartnett@cooley.com)
    AARTI REDDY (274889)
4   (areddy@cooley.com)
    KYLE C. WONG (224021)
5   (kwong@cooley.com)
    REECE TREVOR (316685)
6   (rtrevor@cooley.com)
    3 Embarcadero Center, 20th Floor
7   San Francisco, California 94111-4004
    Telephone:    +1 415 693 2000
8   Facsimile:    +1 415 693 2222

9   COOLEY LLP
    ANGELA DUNNING (212047)
10  (adunning@cooley.com)
    ALEX KASNER (310637)
11  (akasner@cooley.com)
    3175 Hanover Street
12  Palo Alto, California 94304-1130
    Telephone:    (650) 843-5000
13  Facsimile:    (650) 849-7400

14  Attorneys for Defendant
    TWITTER, INC.

15                  UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                    SAN FRANCISCO DIVISION

18

19  ALEX BERENSON,                          Case No. 3:21-cv-09818-WHA

20              Plaintiff,                   NOTICE OF MOTION & MOTION;
                                             MEMORANDUM OF POINTS &
21       v.                                  AUTHORITIES IN SUPPORT OF DEFENDANT
                                             TWITTER, INC'S MOTION TO DISMISS
22  TWITTER, INC.,                           PLAINTIFF'S COMPLAINT

23              Defendant.                   Hearing Date: April 28, 2022; 8:00 am

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

1

**TABLE OF CONTENTS**

2

**Page**

3  I.   STATEMENT OF FACTS ................................................................................. 3

4  II.  LEGAL STANDARDS .................................................................................... 4

   III. PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS (COUNT I) ............... 4

5       A.   Plaintiff Fails to Plead Government "Joint Action" with Twitter. .......... 5

6       B.   Plaintiff Fails to Plead a "Governmental Nexus" to Twitter's Actions. ............... 6

7  IV.  PLAINTIFF'S CALIFORNIA CONSTITUTION CLAIM FAILS (COUNT VII) ........... 7

   V.   PLAINTIFF'S ATTEMPT TO TREAT TWITTER AS A COMMON CARRIER
8       FAILS (COUNT III) .................................................................................... 9

9  VI.  PLAINTIFF'S LANHAM ACT CLAIM FAILS (COUNT II) ........................ 10

10      A.   Plaintiff's Allegations Fail to Satisfy Rule 9(b)'s Particularity
             Requirement. ................................................................................ 11

11      B.   The Challenged Statements Are Not "Commercial Advertising or
             Promotion." .................................................................................. 11

12      C.   None of the Challenged Statements Is False or Misleading. ............... 12

13      D.   Plaintiff Fails to Allege That Twitter's Statements Harmed Him. ...... 13

   VII. PLAINTIFF FAILS TO STATE AN UNFAIR COMPETITION LAW CLAIM
14      (COUNT IV) .............................................................................................. 14

15      A.   Plaintiff Lacks Standing to Seek Injunctive Relief Under the UCL. .......... 14

        B.   Plaintiff Lacks Standing to Seek Restitution Under the UCL. ............ 15
16
        C.   Plaintiff's Challenged Statements Are Non-Commercial Speech. ....... 15

17      D.   Plaintiff Fails to Allege Any Unlawful, Fraudulent, or Unfair Conduct. ........... 15

18 VIII. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT
        (COUNT V) ............................................................................................... 16
19
   IX.  PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL
20      (COUNT VI) .............................................................................................. 18

        A.   Plaintiff Alleges No Promise. ....................................................... 19
21
        B.   Plaintiff Fails to Plead Reasonable Reliance. ................................. 21

22 X.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS (COUNT VIII) ............. 23

   XI.  THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS ....................... 23
23
   XII. SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS
24      PLAINTIFF'S CLAIMS ............................................................................. 24

   XIII. CONCLUSION ......................................................................................... 25
25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
    966 F.2d 443 (9th Cir. 1992)............................................................................................. 21

*Aguinaldo v. Ocwen Loan Servicing, LLC*,
    2012 WL 3835080 (N.D. Cal. Sept. 4, 2012) ................................................................... 20

*Albertson's, Inc. v. Young*,
    107 Cal. App. 4th 106 (2003)............................................................................................. 8

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021)............................................................................ 11, 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662.................................................................................................................. 4, 6

*Bivens v. Six Unknown Named Agents*,
    403 U.S. 388 (1971)........................................................................................................... 4

*Block v. eBay, Inc.*,
    747 F.3d 1135 (9th Cir. 2014)......................................................................................... 20

*Blue Diamond Renewables, LLC v. GE Energy Fin. Servs.*,
    2013 WL 5427991 (C.D. Cal. Sept. 25, 2013)................................................................. 22

*Blumenthal v. Drudge*,
    992 F. Supp. 44 (D.D.C. 1998)........................................................................................ 10

*Brittain v. Twitter, Inc.*,
    2019 WL 2423375 ........................................................................................................... 25

*Children's Health Def. v. Facebook Inc.*,
    2021 WL 2662064 (N.D. Cal. June 29, 2021) ......................................................... 6, 12, 15

*Coffee v. Google, LLC*,
    2021 WL 493387 (N.D. Cal. Feb. 10, 2021).................................................................... 25

*Constituents for Thoughtful Gov't v. Twitter, Inc.*,
    No. CGC-20-583244 (Cal. Super. Ct. July 13, 2020) ...................................................... 25

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)............................................................................................................. 4

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017)............................................................................................. 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

**TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA**

*Daniels v. Alphabet Inc.*,
2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ................................................................ *passim*

*Daniels v. Select Portfolio Servicing, Inc.*,
246 Cal. App. 4th 1150 (2016) ....................................................................................... 21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ......................................................................................................... 10

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018) ............................................................................ 13

*Div. of Lab. L. Enf't v. Transpacific Transp. Co.*,
69 Cal. App. 3d 268 (1977) ............................................................................................ 19

*Doe v. Google LLC*,
2021 WL 4864418 (N.D. Cal. Oct. 19, 2021) .................................................................. 6

*Domen v. Vimeo, Inc.*,
433 F. Supp. 3d 592 (S.D.N.Y. 2020) ......................................................................... 8, 25

*Dunkel v. eBay Inc.*,
2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ................................................................ 18

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) .............................................................. 17, 25

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) .......................................................................... 11

*Elkay Int'l Ltd. v. Color Image Apparel, Inc.*,
2015 WL 13917733 (C.D. Cal. June 3, 2015) ................................................................. 19

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
946 F.3d 1040 (9th Cir. 2019) ....................................................................................... 25

*Epic Games, Inc. v. Apple Inc.*,
2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) ............................................................... 16

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) ....................................................................... 24

*Faulks v. Wells Fargo & Co.*,
231 F. Supp. 3d 387 (N.D. Cal. 2017) ........................................................................... 21

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ........................................................................... 6

*Fields v. Twitter, Inc.*,
217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ................ 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

*Florer v. Congregation Pidyon Shevuyim, N.A.*,
     639 F.3d 916 (9th Cir. 2011) ................................................................................................ 5

*Foster v. Reverse Mortg. Sols., Inc.*,
     2020 WL 4390374 (C.D. Cal. May 13, 2020) ...................................................................... 22

*Franklin v. Fox*,
     312 F.3d 423 (9th Cir. 2002) ................................................................................................. 5

*Glover v. Cal. State Univ. Fresno*,
     2015 WL 5734418 (E.D. Cal. Sept. 28, 2015) ..................................................................... 21

*GoEngineer, Inc. v. Autodesk, Inc.*,
     2002 WL 243603 (N.D. Cal. Feb. 14, 2002) ........................................................................ 20

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n.*,
     26 Cal. 4th 1013 (2001) ................................................................................................... 7, 8

*Granadino v. Wells Fargo Bank, N.A.*,
     236 Cal. App. 4th 411 (2015) .............................................................................................. 19

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
     742 F.3d 414 (9th Cir. 2014) ............................................................................................... 23

*Heredia v. Wells Fargo Bank*,
     2016 WL 4608238 (N.D. Cal. Sept. 6, 2016) ...................................................................... 20

*Herrick v. Grindr, LLC*,
     306 F. Supp. 3d 579 (S.D.N.Y. 2018) .................................................................................. 22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
     273 F. Supp. 3d 1099 (N.D. Cal. 2017) ............................................................................ 8, 9

*Horne v. Harley-Davidson, Inc.*,
     660 F. Supp. 2d 1152 (C.D. Cal. 2009) ............................................................................... 19

*Jian Zhang v. Baidu.com Inc.*,
     10 F. Supp. 3d 433 (S.D.N.Y. 2014) ................................................................................... 24

*Khan v. 7-Eleven, Inc.*,
     2015 WL 12781203 (C.D. Cal. May 6, 2015) ...................................................................... 15

*King v. Facebook, Inc.*,
     2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) (UCL) ........................................................... 25

*Kirtley v. Rainey*,
     326 F.3d 1088 (9th Cir. 2003) ............................................................................................... 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
     29 Cal. 4th 1134 (2003) ....................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Krantz v. BT Visual Images, L.L.C.*,
    89 Cal. App. 4th 164 (2001)................................................................................................ 15

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ............................................................................................... 14, 15

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) .......................................................................... 11

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) .......................................................................... 24

*Lewis v. Google, LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) .......................................................................... 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................................ 13, 14

*Mac Isaac v. Twitter, Inc.*,
    2021 WL 3860654 (S.D. Fla. Aug. 30, 2021)............................................................... 24

*Maffick LLC v. Facebook, Inc.*,
    2021 WL 1893074 (N.D. Cal. May 11, 2021) ......................................................... 14, 15

*Malmstrom v. Kaiser Aluminum & Chem. Corp.*,
    187 Cal. App. 3d 299 (1986).......................................................................................... 22

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ...................................................................................... 4, 5, 7, 9

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974).................................................................................................. 10, 24

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020)........................................................................................ 16

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021)......................................................................................*passim*

*NetChoice, LLC v. Paxton*,
    2021 WL 5755120 (W.D. Tex. Dec. 1, 2021) ......................................................... 10, 24

*O'Handley v. Padilla*,
    2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ...............................................................*passim*

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811 (2011) ................................................................................................... 16

*Open Source Sec., Inc. v. Perens*,
    2017 WL 6539874 (N.D. Cal. Dec. 21, 2017) .............................................................. 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- v -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
　475 U.S. 1 (1986) ........................................................................................................... 9

*Panaszewicz v. GMAC Mortg., LLC*,
　2013 WL 2252112 (N.D. Cal. May 22, 2013) ............................................................ 18

*Prager University v. Google LLC*,
　951 F.3d 991 (9th Cir. 2020)..................................................................................... 5, 7

*Publius v. Boyer-Vine*,
　237 F. Supp. 3d 997 (E.D. Cal. 2017)......................................................................... 23

*Rasmussen v. Apple Inc.*,
　27 F. Supp. 3d 1027 (N.D. Cal. 2014) ........................................................................ 16

*Robins v. Pruneyard Shopping Center*,
　23 Cal. 3d 899 (1979) ............................................................................................... 7, 8

*Roots Ready Made Garments v. Gap Inc.*,
　2008 WL 239254 (N.D. Cal. Jan. 28, 2008) .......................................................... 19, 21

*Rutenburg v. Twitter, Inc.*,
　2021 WL 1338958 (N.D. Cal. Apr. 9, 2021) ................................................................. 7

*Samuelson v. Pub. Util. Comm'n*,
　36 Cal. 2d 722 (1951) ................................................................................................... 9

*Serova v. Sony Music Ent.*,
　44 Cal. App. 5th 103 (2020)......................................................................................... 15

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
　144 F. Supp. 3d 1088 (N.D. Cal. 2015) ....................................................................... 24

*Sonner v. Premier Nutrition Corp.*,
　971 F.3d 834 (9th Cir. 2020)........................................................................................ 15

*Squaw Valley Ski Corp. v. Super. Ct.*,
　2 Cal. App. 4th 1499 (1992)...................................................................................... 9, 10

*Sun v. Wells Fargo Bank, Nat'l Ass'n*,
　2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) ............................................................ 18

*Sweet v. Google, Inc.*,
　2018 WL 1184777 (N.D. Cal. Mar. 7, 2018)............................................................... 17

*Trader Joe's Co. v. Progressive Campaigns, Inc.*,
　73 Cal. App. 4th 425 (1999)........................................................................................... 8

*Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*,
　972 F. Supp. 1275 (C.D. Cal. 1997) ............................................................................ 21

*U.S. Telecom Ass'n v. FCC*,
  855 F.3d 381 (D.C. Cir. 2017) ................................................................................................ 9

*United States v. United Foods, Inc.*,
  533 U.S. 405 (2001) ................................................................................................................ 11

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) ................................................................................................ 14

*Van v. Target Corp.*,
  155 Cal. App. 4th 1375 (2007) ................................................................................................ 8

*Wright v. Charles Schwab & Co.*,
  2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ....................................................................... 16

*Zepeda v. PayPal, Inc.*,
  777 F. Supp. 2d 1215 (N.D. Cal. 2011) .................................................................................. 18

*Zierolf v. Wachovia Mortg.*,
  2012 WL 6161352 (N.D. Cal. Dec. 11, 2012) ........................................................................ 19

*ZL Techs., Inc. v. Gartner, Inc.*,
  709 F. Supp. 2d 789 (N.D. Cal. 2010) .................................................................................... 13

**Statutes & Court Rules**

15 U.S.C. § 1125 ........................................................................................................................... 11

Cal. Civ. Code
  § 2168 ........................................................................................................................................ 9
  § 2169 ........................................................................................................................................ 9

Federal Rules of Civil Procedure
  Rule 9(b) ............................................................................................................................ 11, 16
  Rule 12(b)(6) ............................................................................................................................. 1

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vii -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

**NOTICE OF MOTION & MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, on April 28, 2022 in Courtroom 12 of the above-captioned Court, Defendant Twitter, Inc. ("Twitter") will and hereby does move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff Alex Berenson's Complaint with prejudice. The Motion is based upon the below Memorandum of Points and Authorities; the accompanying Declaration of Kyle C. Wong; all papers on file in this action; and such other and further argument that the Court may consider.

**STATEMENT OF RELIEF SOUGHT**

Twitter seeks an order dismissing Plaintiff's Complaint with prejudice.

**ISSUES TO BE DECIDED**

1.      Whether Plaintiff has failed to state a claim for each of his eight causes of action.

2.      Whether the First Amendment bars Plaintiff's claims.

3.      Whether Section 230 of the Communications Decency Act bars Plaintiff's claims.

**MEMORANDUM OF POINTS & AUTHORITIES**

Plaintiff Alex Berenson ("Plaintiff") asks this Court to force Defendant Twitter, Inc. ("Twitter") to use its platform to publish Plaintiff's speech about the COVID-19 pandemic—speech that Twitter found violates its COVID-19 misleading information policy and that Twitter does not want to disseminate. Plaintiff's extraordinary request rests on a hodgepodge of meritless claims that would require this Court to disregard longstanding precedent, adopt discredited legal theories, and ignore Twitter's own First Amendment rights and the protections afforded it under Section 230 of the Communications Decency Act ("Section 230"). The Court should reject Plaintiff's request.

Twitter suspended Plaintiff's account in August 2021 based on Plaintiff's repeated violations of Twitter's COVID-19 misleading information policy. This policy is designed to permit robust discussion of the pandemic while also preventing Twitter's platform from being used to promulgate falsehoods that might prevent the public from making informed decisions regarding their health and put people and communities at risk. Twitter determined that Plaintiff violated this policy when, for example, he declared that the Pfizer-BioNTech vaccine "does nothing to reduce

1

the overall risk of death" and asserted that the notion that "vaccines protect against 'severe disease and death' is a lie." (¶¶ 111(d), 140.[1]) When Twitter enforced its policies—which permit Twitter to suspend user accounts for "any or no reason"—Plaintiff filed this suit for damages and to compel Twitter to reinstate his account.

Plaintiff's claims should be dismissed. Plaintiff first alleges that Twitter's editorial judgments not to disseminate Plaintiff's COVID-19 messages violated the First Amendment and California Constitution (Counts I, VII), ignoring both that Twitter is a private actor and that it has its own First Amendment right to make those judgments. Plaintiff fares no better with his attempt to apply California's 150-year-old common carrier law to Twitter (Count III). Courts have uniformly declined to extend this law to online platforms like Twitter, and there is no basis to do so here. Plaintiff likewise fails to state claims under the Lanham Act (Count II) or the California Unfair Competition Law ("UCL") (Count IV). Plaintiff lacks standing under these statutes and also fails to state a claim because the statements he challenges are non-commercial, convey true facts or opinions, and are not fraudulent or otherwise actionable. Plaintiff's contract claim (Count V) fails because he agreed to Twitter's User Agreement, including its Terms of Service ("Terms"), which clearly afford Twitter the right to suspend his account "for any or no reason." Lastly, as to Plaintiff's promissory estoppel claim (Count IV), the alleged statements from a Twitter communications executive to Plaintiff are far from the kind of definite promise or assurance required to create a legally enforceable promise. In any event, Plaintiff's interpretation of the alleged statements is contrary to the express Terms, precluding any theory of reasonable reliance.

Finally, all of Plaintiff's claims are barred by the First Amendment as they seek to force Twitter to publish Berenson's content over Twitter's objection. The First Amendment protects private entities like Twitter from such government-compelled intrusion on their editorial and publishing decisions. Plaintiff's claims are also independently barred by Section 230, as they all arise from Twitter's "traditional editorial functions," including whether to publish or withdraw content. Accordingly, the Complaint should be dismissed with prejudice.

---

[1] All cites to the Complaint are denoted by paragraph only.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

## I.   STATEMENT OF FACTS

Plaintiff is a self-described "independent journalist" and "prominent critic of the governmental and public health response to the COVID-19 pandemic." (¶¶ 1–2.) Before the pandemic began, Plaintiff created an account on Twitter, a global social media platform that allows users to post content—most often short messages called "Tweets"—which Twitter then publishes and makes available to other users to view and interact with. (¶¶ 22, 23, 60.) By creating and subsequently using his account, Plaintiff accepted Twitter's Terms. The Terms provide that Twitter "may suspend or terminate your account or cease providing you with all or part of [its] Services at any time for any or no reason[.]" (¶ 133.)

Twitter's Terms also include and incorporate by reference a variety of policies and guidelines, called the Twitter Rules. The Twitter Rules are designed to minimize the reach of certain content Twitter deems harmful and to otherwise foster healthy conversations on its platform. Twitter's COVID-19 misleading information policy, which figures prominently in Plaintiff's Complaint, seeks to combat the spread of misinformation and falsehoods about COVID-19 and thus to safeguard public health. (*See* ¶¶ 70–77, 97–101, 107–108.)

In contravention of this policy, throughout the pandemic, Plaintiff has repeatedly tweeted misinformation contrary to prevailing guidance from governments, scientists, and public health experts, many of whom he has called "idiots." (¶ 91.) For instance, he stated that Pfizer's vaccine "does nothing to reduce the overall risk of death" (¶ 140); that "mRNA/LNP biotechnology . . . is more properly described as a gene therapy than a vaccine" (¶ 113); and that COVID-19 vaccines were "at best . . . a therapeutic with a limited window of efficacy and terrible side effect profile that must be dosed IN ADVANCE OF ILLNESS" (¶ 144).

Plaintiff alleges that Tweets like these greatly increased his number of followers on Twitter. (¶ 154.) Twitter affixed labels to a number of such Tweets, noting they were "misleading" and providing users with links to information from public health agencies and experts. (¶¶ 137–144.)

Plaintiff alleges that after he tweeted concerns about Twitter's COVID-19 policy in May 2020, Twitter communications executive Brandon Borrman contacted him via email to suggest "having a discussion" about the topic. (¶¶ 80–81.) The two allegedly continued an intermittent

Cooley LLP
Attorneys at Law
San Francisco

- 3 -

Twitter's Motion to Dismiss
Plaintiff's Complaint
Case No. 3:21-cv-09818-WHA

email exchange over the next several months in which they discussed topics including Twitter's approach to public health misinformation and Plaintiff's views on the pandemic and social media. (¶¶ 87, 102–103.) When Twitter revised its COVID-19 policies in March 2021 and informed users that it would suspend accounts that tweeted five posts that Twitter deemed misleading, Plaintiff emailed Mr. Borrman to ask whether, if Twitter "had concerns" about his posts, Twitter would "let [him] know and give [him] a chance to respond to it before taking any action." (¶ 109.) Mr. Borrman offered no assurances, instead allegedly saying that he would try to provide "a heads up before an action is taken," but cautioning Plaintiff that he was not responsible for Twitter's enforcement decisions: "I am not always made aware of them before they're executed." (¶ 110.)

Finally, after Plaintiff continued and multiple policy violations, Twitter exercised its right under the Terms to permanently suspend Plaintiff's account on August 28, 2021. (¶ 144.) Shortly thereafter, a Twitter spokesperson informed various media outlets of the suspension. (¶ 135.)

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," disregarding conclusory statements or unwarranted deductions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted).

## III.   PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS (COUNT I)

Plaintiff's first count alleges that Twitter violated his First Amendment rights to free speech and to petition the government, and he seeks an injunction compelling Twitter to post his content.[2] (¶¶ 160–161.) However, the First Amendment "prohibits only *governmental* abridgment of speech[,]" not "*private* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Because Twitter is a private company (¶ 15), not a state actor subject to the First Amendment, Plaintiff's claim fails as a matter of law.

When a private entity like Twitter "provides a forum for speech," it "is not ordinarily constrained by the [Constitution] because the private entity is not a state actor." *Halleck*, 139 S. Ct.

---

[2] Plaintiff puzzlingly references *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (¶¶ 158, 163.) *Bivens* claims are for money damages (403 U.S. at 397), but Plaintiff seeks only an injunction for his constitutional claims (Prayer for Relief at B-F), and no *Bivens* remedy is available against private entities like Twitter in any event. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

at 1930. In *Prager University v. Google LLC*, for example, the Ninth Circuit held that YouTube is not a state actor and cannot be sued under the First Amendment for its editorial decisions about whether to display content on its private platform. 951 F.3d 991, 997 (9th Cir. 2020). This same reasoning applies to Twitter and protects Twitter's own First Amendment right to exercise editorial control over the speech on its platform. *See Halleck*, 139 S. Ct. at 1932. As court after court has held, the law recognizes a "presumption that conduct by private actors is not state action." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

Nor has Plaintiff alleged, as he contends, facts supporting his theories of state action: (1) "joint action" or (2) a "governmental nexus." (¶ 131.)[3]  The Complaint comes nowhere close to meeting the exacting standard required to treat a private entity as a state actor.

### A.    Plaintiff Fails to Plead Government "Joint Action" with Twitter.

The "joint action" test requires Plaintiff to plead that "the state has so far insinuated itself into a position of interdependence with [Twitter] that it must be recognized as a joint participant in" suspending Plaintiff's account. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (cleaned up). Courts require "a substantial degree of cooperation before imposing civil liability for actions by private individuals." *Id.* Plaintiff cannot meet this exacting standard, pleading only unsupported and conclusory allegations that the government was working in "close coordination" with Twitter regarding COVID-19 misinformation and speculation that Twitter flagged his accounts at the government's encouragement. Such allegations do not establish joint action. *Id.*

"The publicly expressed views of [federal officials]—regardless of how influential—do not constitute 'action' on the part of the federal government." *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *6 (N.D. Cal. Mar. 31, 2021) (rejecting claims that statements by Congress members supported joint action in YouTube's content moderation). Plaintiff thus cannot establish joint action simply by pointing to public statements by President Biden, Surgeon General Vivek Murthy, Dr. Anthony Fauci, and White House Press Secretary Jen Psaki decrying the spread of COVID-19 misinformation and urging social media companies to take action. (¶¶ 118–126.)

---

[3] Plaintiff does not appear to invoke the other two other state action tests (governmental compulsion and public function). (*See* ¶ 131). Plaintiff cannot state a claim under any theory, but Twitter reserves the right to respond to these theories should Plaintiff belatedly assert them.

Plaintiff's allegations that government representatives said they were "in regular touch" or working in "close coordination" with social media platforms, (¶¶ 124, 129), likewise "do not show that the government was a joint participant in the challenged activity[.]" *Children's Health Def. v. Facebook Inc.*, 2021 WL 2662064, at *11 (N.D. Cal. June 29, 2021) (rejecting argument based on "general statements by the CDC and [Mark] Zuckerberg about 'working together' to reduce the spread of health or vaccine misinformation, or to promote universal vaccination"); *see also O'Handley v. Padilla*, 2022 WL 93625, at *10 (N.D. Cal. Jan. 10, 2022) ("Generalized statements about working together do not demonstrate joint action."). Indeed, the government officials' alleged statements contradict Plaintiff's coordination theory. (¶ 125 ("Any decision about platform usage and who should be on the platform is orchestrated and determined by private-sector companies," "not the federal government[.]").)

Lastly, Plaintiff speculates "[u]pon information and belief" that the federal government "flagged" for Twitter "'problematic posts'" that he authored. (¶ 122.) According to Plaintiff, because the government was allegedly "flagging problematic posts" for a *different* Internet platform, Facebook, Twitter's suspension of his account must have been the result of government action. (*Id.*) Such speculative allegations do not support an inference that the government was also communicating with Twitter, much less that it specifically instructed Twitter to flag his Tweets. *See Iqbal*, 556 U.S. at 681. But, even assuming Plaintiff had plausibly alleged that the federal government requested that Twitter suspend his account or flag his Tweets (and he has not), that would still not amount to joint action. In *O'Handley*, Judge Breyer recently held that the plaintiff failed to plead joint action where he alleged that a California state agency flagged the plaintiff's Tweets as containing election misinformation. 2022 WL 93625, at *9–10. Such "one-off, one-way communication" is not sufficient to allege joint action. *Id.* at *10; *see also Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1125-26 (N.D. Cal. 2020) (allegations that Facebook maintained a "partnership" with federal officials and removed over 150 pages and accounts based on "an initial tip from US law enforcement" did "not establish joint action").

**B.      Plaintiff Fails to Plead a "Governmental Nexus" to Twitter's Actions.**

"[T]he Ninth Circuit has analyzed the joint action and governmental nexus theories in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

tandem." *Doe v. Google LLC*, 2021 WL 4864418, at *6 (N.D. Cal. Oct. 19, 2021). Because Plaintiff has failed to plead joint action, he necessarily "also fails to satisfy the nexus test." *O'Handley*, 2022 WL 93625, at *22. Indeed, the governmental nexus test is ***more*** demanding than the joint action test, requiring "such a close nexus between the [government] and the challenged action that the seemingly private behavior may be fairly treated as that of the [government] itself.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1094–95 (9th Cir. 2003) (citation omitted). Plaintiff simply does not allege facts to satisfy that exacting standard.

In the end, "[f]ederal courts have uniformly rejected attempts to treat . . . social media companies as state actors[.]" *Rutenburg v. Twitter, Inc.*, 2021 WL 1338958, at *2 (N.D. Cal. Apr. 9, 2021) (collecting cases and finding that Twitter was not engaged in state action); *see also O'Handley*, 2022 WL 93625, at *8 (rejecting efforts to transform "private content-moderation decisions into state action"). The same result follows here. "[A] private entity hosting speech on the Internet is not a state actor." *Prager Univ.*, 951 F.3d at 997. And a finding of joint action here would "[e]xpand[ ] the state-action doctrine beyond its traditional boundaries . . . while restricting individual liberty and private enterprise." *Halleck*, 139 S. Ct. at 1934.

## IV.   PLAINTIFF'S CALIFORNIA CONSTITUTION CLAIM FAILS (COUNT VII)

Plaintiff contends that "Twitter's censorship of [his] speech violates the California State Constitution." (¶ 220.) But like the First Amendment, the California Constitution's speech and petition clauses "only protect[] against state action." *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n.*, 26 Cal. 4th 1013, 1031 (2001). Thus, for the same reasons Plaintiff's First Amendment claim fails, his California constitutional claim also fails. (*See supra* Section III.)

California's speech and petition clauses extend to persons on private property if, and only if, that property is "the functional equivalent of a traditional public forum." *Golden Gateway Ctr.*, 26 Cal. 4th at 1033. This Court should not be the first to adopt Plaintiff's novel contention that Twitter is a public forum. (¶ 219.) No court has applied this doctrine beyond a limited group of real property settings, much less to internet or social media providers. There is no reason to do so here.

The principal California case subjecting a private actor to the state Constitution's free speech requirements, *Robins v. Pruneyard Shopping Center*, concerned the courtyard of a publicly

accessible open-air shopping mall. 23 Cal. 3d 899 (1979). *Pruneyard* reasoned that in 1979, malls were places "to which the public is invited" that had become "miniature downtowns" and "a place for large groups of citizens to congregate," and accordingly had taken on a "public character." *Id.* at 910 & n.5. Few other establishments, despite being popular and broadly open to the public, have ever achieved this same status; the *Pruneyard* doctrine is limited and does not apply to "any large business . . . simply because it is 'freely and openly accessible to the public.'" *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106, 117–18 (2003) (citation omitted) (supermarket not public forum); *see also Golden Gateway Ctr.*, 26 Cal. 4th at 1033 (apartment complex not public forum); *Van v. Target Corp.*, 155 Cal. App. 4th 1375, 1391 (2007) (store not public forum); *Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425, 434 (1999) (supermarket not public forum).

As Plaintiff acknowledges, *Pruneyard*'s doctrine has never been extended to social media companies. (*See* ¶ 219.) In fact, all courts presented with the invitation to do so have declined. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017); *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. 2020). There is no basis to extend *Pruneyard* here. To the contrary, the Complaint illustrates the significant and dispositive differences between *Pruneyard* and Twitter. Twitter does not extend an "open and *unrestricted* invitation to the public to congregate freely," *Golden Gateway Center*, 26 Cal. 4th at 1032 (emphasis added) (citing *Pruneyard*, 23 Cal. 3d at 909-10), but instead requires users to create an account and expressly agree to Twitter's Terms before they may post content. (¶¶ 22, 132.) *See Golden Gateway Ctr.*, 26 Cal. 4th at 1033 (apartment complex that "restrict[ed] the public's access" to its premises is not a public forum); *Domen*, 433 F. Supp. 3d at 607 (video-sharing platform where users were required to accept Terms to post content was not a public forum). Likewise, *Pruneyard* turned on the fact that the shopping mall in question had broadly replaced other traditional fora, like the downtown core of San Jose, where its patrons might have once congregated instead. 23 Cal. 3d at 907, 910 & n.5. Twitter, by contrast, is but "one of many alternative fora where citizens of many different states can choose to post" content online. *Domen*, 433 F. Supp. 3d at 607 (declining to extend *Pruneyard* to video-sharing site Vimeo). By Plaintiff's reasoning, virtually any website on which users may post content would amount to a public forum—as would, potentially, the Internet as a whole. The court in *hiQ*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

*Labs* highlighted this very problem, cautioning that embarking down this "slippery slope" could have "potentially sweeping consequences." 273 F. Supp. 3d at 1116.

Finally, unlike in *Pruneyard*, forcing Twitter to carry Plaintiff's messages would infringe on Twitter's own First Amendment rights to exercise editorial judgment. (*See* Section XI, *infra*.) This concern was "[n]otably absent from *Pruneyard*[,]" where there was no claim that public access "might affect the shopping center owner's exercise of his own right to speak[.]" *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 12 (1986). Treating Twitter as a public forum under *Pruneyard* would, by contrast, raise serious problems under the First Amendment, which does not permit the state to force private actors into "the unappetizing choice of allowing all comers or closing the platform altogether." *Halleck*, 139 S. Ct. at 1931.

## V.    PLAINTIFF'S ATTEMPT TO TREAT TWITTER AS A COMMON CARRIER FAILS (COUNT III)

Treating Twitter as a "common carrier" under California Civil Code Section 2169 would be an unjustified departure from over a century of California jurisprudence. Courts have uniformly rejected the contention that an Internet platform falls within the scope of common carrier laws.

To qualify as a common carrier, an entity must "offer[] to the public to carry persons, property, or messages . . . generally and indifferently . . . from place to place for profit." *Squaw Valley Ski Corp. v. Super. Ct.*, 2 Cal. App. 4th 1499, 1507–08 (1992) (quoting Cal. Civ. Code § 2168). Plaintiff does not and cannot allege such facts as to Twitter. First, in contending that this Court may treat Twitter as a common carrier because it "holds itself out to the public as an entity willing to carry messages" (¶ 37), Plaintiff disregards that a common carrier must "generally and indifferently" offer its services to all. *Squaw Valley*, 2 Cal. App. 4th at 1508. As Plaintiff acknowledges, Twitter requires users to agree to its Terms, which expressly limit how and when they may post content to Twitter. (¶¶ 132–33 (conceding that the Terms allowed Twitter to "suspend or terminate your account or cease providing you with all or part of the Services *at any time for any or no reason*" (emphasis added)).) This is far from making "a public offer to carry for all who tender him such goods as he is accustomed to carry." *Samuelson v. Pub. Util. Comm'n*, 36 Cal. 2d 722, 730 (1951); *see also U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 392 (D.C. Cir. 2017) (Srinivasan & Tatel, J.J., concurring in denial of rehearing en banc) ("[W]eb platforms such as

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

Facebook, Google, Twitter, and YouTube . . . are not considered common carriers that hold themselves out as affording neutral, indiscriminate access to their platform without any editorial filtering."); *NetChoice, LLC v. Paxton*,  2021 WL 5755120, at *8 (W.D. Tex. Dec. 1, 2021) ("Unlike broadband providers and telephone companies, social media platforms 'are not engaged in indiscriminate, neutral transmission of any and all users' speech." (citation omitted)); *Blumenthal v. Drudge*, 992 F. Supp. 44, 51 (D.D.C. 1998) (AOL is not "a passive conduit like the telephone company, a common carrier with no control and therefore no responsibility for what is said over the telephone wires," because AOL retains editorial rights over content it disseminates.). Plaintiff also fails to allege that Twitter offers to carry messages "for profit." *Squaw Valley*, 2 Cal. App. 4th at 1508. Indeed, he cannot; Twitter does not charge users to post or send content.

Second, as discussed below, because Plaintiff challenges Twitter's publication of content on its own platform, treating Twitter as a common carrier would violate the First Amendment. Whereas "common carriers merely facilitate the transmission of speech of others," platforms like Twitter instead "routinely manage content, allowing most, banning some, arranging content in ways intended to make it more useful or desirable for users, sometimes adding their own content." *NetChoice*, 2021 WL 5755120, at *8 (cleaned up) (discussing analogous federal common carrier doctrine); *see also O'Handley*, 2022 WL 93625, at *14. To hold social media companies liable as common carriers would infringe on these entities' constitutional right to the "exercise of editorial control and judgment" guaranteed under the First Amendment. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). (*See* Section XI, *infra*.)

## VI.   PLAINTIFF'S LANHAM ACT CLAIM FAILS (COUNT II)

Plaintiff asserts a claim under Section 43(a) of the Lanham Act based on six allegedly false and misleading statements[4] by Twitter: one that he was "permanently suspended for repeated violations of [Twitter]'s COVID-19 misinformation rules" (the "Suspension Statement") and five in which Twitter flagged Plaintiff's Tweets as "misleading" (the "Misleading Labels"). (¶ 135.)

---

[4] Plaintiff's claim is directed only towards these statements. He does not and cannot challenge the actual suspension of his account under Section 43(a), as the statute proscribes only false or misleading statements and "does not have boundless application as a remedy for unfair trade practices." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

This claim fails on multiple levels.

### A.    Plaintiff's Allegations Fail to Satisfy Rule 9(b)'s Particularity Requirement.

Because Plaintiff's Lanham Act claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standards requiring him to allege "specific content of the false representations" and to "set forth what is false or misleading about a statement, and why it is false." *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (citation omitted). Plaintiff fails to satisfy Rule 9(b) in several respects. He asserts that Twitter mislabeled five Tweets "misleading," but nowhere pleads the actual language Twitter allegedly attached to them. Further, Plaintiff's Tweets about "Chinese-made COVID-19 vaccines," "an increase in COVID-19 deaths following a first vaccine dose," and "issues related to transplanting organs" from patients with "vaccine-induced" diseases (¶¶ 166(b), (d), (e)) are otherwise mentioned just once, in passing, with no explanation of *why* the "misleading" labels were false or misleading. (¶ 114.) Nor does he explain what was allegedly fraudulent about the Suspension Statement; he merely challenges Twitter's application of its policy. (¶¶ 135–36.) This failure alone requires dismissal.

### B.    The Challenged Statements Are Not "Commercial Advertising or Promotion."

The Lanham Act claim is not only inadequately pleaded; it is substantively and fatally defective. Section 43(a) prohibits misrepresenting goods or services in "commercial advertising or promotion[.]" 15 U.S.C. § 1125(a)(1)(B). If the statements at issue are "not commercial speech, then the Lanham Act claim must fail[.]" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021). Commercial speech is "usually defined as speech that does no more than propose a commercial transaction[.]" *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001).

The Suspension Statement is not "commercial advertising or promotion":  it did not refer to either party's goods or services and proposed no commercial transaction, but merely stated that Plaintiff was "permanently suspended for repeated violations of our COVID-19 misinformation rules." (¶ 135.) Because this statement was "made to the media and published in a journalist's news article concerning a matter of public importance[,]" it is "not commercial speech[.]" *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 864 (N.D. Cal. 2015) (statements "made by Uber representatives to journalists and published in independent online articles" regarding Uber's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

safety were non-commercial). Likewise, the Misleading Labels are not "commercial advertising or promotion." While these labels informed users that Twitter had determined the substance of the Tweets to be misleading, they neither referenced any of Plaintiff's goods or services nor promoted Twitter's goods or services or those of anyone else. (¶¶ 113–14, 166.) *See also Children's Health Defense*, 2021 WL 2662064, at *5–6 (dismissing Section 43(a) challenge to Facebook's placement of "False Information" labels on plaintiff's posts as noncommercial because "all of the alleged misrepresentations—the warning label and the fact-checks—are simply providing information.").

### C.    None of the Challenged Statements Is False or Misleading.

Section 43(a) applies only to a "false or misleading representation of fact" that is "specific and measurable" and "capable of being proved false or of being reasonably interpreted as a statement of objective fact[,]" such that it might deceive a consumer. *Coastal Abstract Serv., Inc. v. First Am. Title Ins.* Co., 173 F.3d 725, 730–31 (9th Cir. 1999). None of the statements Plaintiff challenges meets these standards.

**The Suspension Statement.** The Complaint makes clear that there was nothing false or misleading about the Suspension Statement. There is no dispute that Plaintiff's account was, in fact, "permanently suspended." (¶ 6.) Further, Plaintiff does not dispute (because he cannot) that Twitter suspended him because it determined that he had committed "repeated violations" of its COVID-19 misinformation rules. (*Id.*) Both of these were true facts.

To the extent Plaintiff's theory is that the Suspension Statement was misleading because Twitter misapplied its own Rules, he still fails to allege an actionable statement. Plaintiff may disagree with Twitter's interpretation of its policies, but any statements by Twitter that Plaintiff violated its policies "are opinion statements, and not statements of fact[,]" and, as such, are "not actionable under the Lanham Act." *Coastal Abstract*, 173 F.3d at 731 (statement implying that the unlicensed plaintiff was required to have a business license was nonactionable opinion); *see also Open Source Sec., Inc. v. Perens*, 2017 WL 6539874, at *8 (N.D. Cal. Dec. 21, 2017) (statement regarding interpretation of a private contract was non-actionable opinion).

**The Misleading Labels.** Plaintiff's challenge to Twitter's Misleading Labels likewise fails because they are non-actionable opinions. The Ninth Circuit's decision in *Ariix*, which reaffirmed

Cooley LLP
Attorneys at Law
San Francisco

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

that "[s]tatements of opinion . . . are not actionable," is instructive. 985 F.3d at 1121. There, the court rejected claims that defendant, by assigning star ratings to plaintiff's nutritional supplements, had made actionable misstatements of fact. *Id.* The court explained that, although the system "purport[ed] to rely on scientific and objective criteria[,]" "there is an inherently subjective element in deciding which scientific and objective criteria to consider[,]" and, as such, the "ratings in the [defendant's] Guide are not actionable." *Id.* Likewise here, Twitter's labeling of Plaintiff's Tweets reflects its opinion that, based on its evaluation and application of the criteria in its policy, the Tweets were misleading. *Id.* Twitter's policy specifically required the company to form an opinion whether a Tweet is "demonstrably false or misleading" or "likely to impact public safety or cause serious harm." (¶ 136.) Because the determination that Plaintiff's Tweets are "misleading" is "reflective of [Twitter's] *subjective* assessment of what is important" and cannot be proven false, Twitter's statements are not actionable. *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 798 (N.D. Cal. 2010); *see also Coastal Abstract*, 173 F.3d at 730–31 (to be actionable, statements must be "capable of being proved false"); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018) ("What factors the defendant believes to be important in assessing [content], and the result of the defendant's weighing of those factors, cannot be proven false.").

### D.        Plaintiff Fails to Allege That Twitter's Statements Harmed Him.

Plaintiff's Lanham Act claim also fails because he has not alleged facts placing him within the "zone of interests" encompassed by Section 43(a). To do so, Plaintiff must plead that Twitter's statements caused "economic or reputational injury flowing directly from the [alleged] deception wrought by the defendant's advertising[,]" i.e., caused consumers to "withhold trade" from him. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Plaintiff does not and cannot make this showing, which is fatal to his claim.

First, Plaintiff does not plausibly allege that he has sustained the requisite "injury to a commercial interest in reputation or sales." *Id.* at 132. Plaintiff asserts generally that Twitter's statements "harm his ability to retain and expand his readership and audience, including the relevant market for his books and pamphlets," but provides no explanation for this assertion that would render it plausible. (¶ 169.) He has not alleged, for example, any lost sales. "[S]uch shapeless

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

allegations of harm do not satisfy the requirement that a Section 43(a) plaintiff 'must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation.'" *Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *4 (N.D. Cal. May 11, 2021) (rejecting claims of injury based on lost "monetization of [plaintiff's] social media content (through advertising, e-commerce and otherwise)" as a result of Facebook flagging content).

Second, Plaintiff does not allege "injury flowing directly from" any statement by Twitter. *Lexmark*, 572 U.S. at 133. Nor can he. According to Plaintiff's own Complaint, his readership *grew* after Twitter first affixed a label to his Tweets, reaching "345,000 followers" by the time of his suspension a month later. (¶ 154.) He even brags that his Tweets received millions *more* views in the month during which Twitter was labeling his Tweets as misleading than they had in the month before. (*Id.*) Thus, by Plaintiff's own admission, Twitter's statements *increased*, rather than *decreased*, his audience. A Lanham Act claim simply cannot lie in these circumstances.

**VII.   PLAINTIFF FAILS TO STATE AN UNFAIR COMPETITION LAW CLAIM (COUNT IV)**

Plaintiff's UCL claim, which centers on the same six statements that, as detailed above, were insufficient to allege a Lanham Act claim (¶ 188), suffers from numerous fatal defects.

**A.   Plaintiff Lacks Standing to Seek Injunctive Relief Under the UCL.**

Plaintiff fails to allege statutory standing under the UCL, since he cannot "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice[.]" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321–22 (2011). Moreover, Plaintiff cannot show that he suffered an injury that is "actual or imminent, not conjectural or hypothetical." *Id.* at 322-23 (citations and internal quotation marks omitted). As discussed above, Plaintiff alleges nebulous, speculative economic injury to "his ability to retain and expand his readership and audience, including the relevant market for his books and pamphlets." (¶ 169.) He does not allege a concrete injury that flows from Twitter's conduct, only that he *might* suffer economic loss in the future if he is unable to sell books or other materials. (*See* Section VI.D, *supra*.) This is insufficient to establish standing. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1049 (9th Cir. 2017) (theory that cell phone bill would eventually increase as a result of defendant's practices was

"hypothetical and conjectural" and could not support standing); *Maffick*, 2021 WL 1893074, at \*4.

**B.     Plaintiff Lacks Standing to Seek Restitution Under the UCL.**

Plaintiff purports to seek "damages" under the UCL. (Prayer for Relief C.) This is impossible; "damages . . . are not available under the UCL[.]" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). And Plaintiff's inability to state a claim for restitution follows from his inability to state an economic injury under the UCL. Restitution is an order "compelling a UCL defendant to return money obtained through an unfair business practice[,]" *id.* at 1144-45 (citation omitted), and "that money or property must have been 'acquired' *by the defendant*," *Khan v. 7-Eleven, Inc.*, 2015 WL 12781203, at \*3 (C.D. Cal. May 6, 2015) (emphasis added) (citation omitted). Here, however, Plaintiff's alleged economic injury consists only of alleged losses from "not being able to publish his reporting, promote his booklets and new book, and sell subscriptions to his Substack account" via Twitter—none of which resulted in the transfer of property from Plaintiff *to Twitter*. (¶ 192.) Thus, no claim for UCL restitution has been stated.[5]

**C.     Plaintiff's Challenged Statements Are Non-Commercial Speech.**

"California's consumer protections laws, like the unfair competition law, govern only *commercial* speech," and as a result, Plaintiff's challenges to the non-commercial Misleading Labels and the Suspension Statement fail. *Serova v. Sony Music Ent.*, 44 Cal. App. 5th 103, 124 (2020) (emphasis omitted). As explained above, none of the statements challenged by Plaintiff are commercial speech. *See* Section VI.B, *supra*; *Children's Health Def.*, 2021 WL 2662064, at \*16 (labels affixed to Facebook posts regarding COVID-19 were not commercial speech). Accordingly, these statements cannot be the basis for a UCL claim.

**D.     Plaintiff Fails to Allege Any Unlawful, Fraudulent, or Unfair Conduct.**

Plaintiff also does not plausibly allege any "unlawful, unfair, [or] fraudulent business practices[.]" *Kwikset*, 51 Cal. 4th at 317. *First,* Plaintiff's claim under the UCL's "unlawful" prong fails because, as explained herein, Plaintiff has failed to state a claim against Twitter for violation of any other law. *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (UCL

---

[5] Relatedly, restitution is also unavailable because Plaintiff has not "establish[ed] that []he lacks an adequate remedy at law," and in fact seeks legal damages on his other theories. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

claims "stand or fall depending on the fate of the antecedent substantive causes of action").

*Second*, Plaintiff's bald assertion that Twitter's statements and enforcement of its Terms were allegedly "unfair" (¶¶ 188–89) is insufficient to state a claim under the "unfair" prong. "[R]ecitation of the legal standard and conclusory allegations of a UCL violation do not state an 'unfair' UCL claim." *Wright v. Charles Schwab & Co.*, 2020 WL 6822887, at *5 (N.D. Cal. Nov. 20, 2020). Instead, a plaintiff must plead specific facts that satisfy any of the recognized tests for unfair-prong claims. *Epic Games, Inc. v. Apple Inc.*, 2021 WL 4128925, at *115 (N.D. Cal. Sept. 10, 2021) (summarizing available tests). Plaintiff makes no effort to do so and no such facts exist.

*Third*, Plaintiff cannot state a claim under the statute's "fraudulent" prong. To begin, as explained above, Plaintiff's claims do not satisfy the heightened pleading standards of Rule 9(b). (*See* Section VI.A, *supra*); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (applying Rule 9(b) to UCL claim sounding in fraud). Moreover, a statement is actionable as fraud only if it is a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039–40 (N.D. Cal. 2014) (citations omitted). The statements Plaintiff challenges are either true or non-actionable opinion. (*See* Section VI.C, *supra*.) Finally, Plaintiff's allegation that Twitter believes it "can label content regardless of what its rules say," (¶ 189), cannot support a fraud-prong claim as the Terms expressly allow Twitter to refuse to publish a user's content for any reason. (¶ 133.)

## VIII.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT V)

Plaintiff's breach of contract claim requires that he plead (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Daniels*, 2021 WL 1222166, at *7 (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). Because Twitter's Terms expressly and unambiguously permitted it to suspend Plaintiff's account—precisely the action Plaintiff complains of—the contract claim must be dismissed.

As Plaintiff concedes, the Terms expressly authorize Twitter to "suspend or terminate your account or cease providing you with all or part of the Services at any time *for any or no reason, including, but not limited to,* if we reasonably believe . . . you have violated these Terms or the Twitter Rules and Policies." (¶ 133 (emphasis added).) Courts have repeatedly confirmed that such

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 16 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

1    an express contractual provision forecloses Plaintiff's claim. *See, e.g.*, *Daniels*, 2021 WL 1222166,

2    at *8 ("Because 'defendants were given the right to do what they did by the express provisions of

3    the contract there can be no breach.'" (citations omitted)); *Ebeid v. Facebook, Inc.*, 2019 WL

4    2059662, at *7 (N.D. Cal. May 9, 2019) (rejecting breach of contract claim where Facebook

5    reserved right to "reject or remove any ad for any reason"); *Murphy v. Twitter, Inc.*, 60 Cal. App.

6    5th 12, 35 (2021) (breach of contract claims based on Twitter's suspension of accounts "necessarily

7    fail[] . . . because Twitter's terms of service expressly state that they reserve the right to "suspend

8    or terminate [users'] accounts . . . for any or no reason without liability." (citation omitted)).[6]

9            Plaintiff's attempt to escape this clear provision fails. First, he asserts that Twitter

10   "amended" its Terms through its five-strike policy and could therefore only suspend Plaintiff if he

11   "objective[ly]" violated that policy. (¶¶ 202–03.) That Twitter set out an additional policy limiting

12   certain content given the COVID-19 pandemic "does not negate the sweeping force of the clear

13   and explicit provision" allowing it to suspend or terminate an account for any or no reason. *Sweet*

14   *v. Google, Inc.*, 2018 WL 1184777, at *10 (N.D. Cal. Mar. 7, 2018) (holding that policies governing

15   advertisements did not displace YouTube's overarching disclaimer that it was "not obligated to

16   display any advertisements alongside your videos"); *see also Daniels*, 2021 WL 1222166, at *8

17   (holding existence of YouTube guidelines did not displace platform's broader discretion, stated in

18   Terms of Service, to remove content). That Plaintiff disagrees with Twitter's interpretation of its

19   five-strike policy is irrelevant. "Nothing in the [five-strike policy] suggests that violation of the

20   polic[y] is the *only* reason" why Twitter can remove content; "it is simply one reason." *Sweet*, 2018

21   WL 1184777, at *10. To the contrary, the clause expressly permitting Twitter to "remove content

22   in circumstances outside of a violation of the" five-strikes policy remained constant. (¶¶ 202–03.)[7]

---

[6] Plaintiff erroneously asserts that the "liability waiver" in the Terms "is unenforceable" because Twitter is a "common carrier" which cannot contract away "liability for . . . gross negligence, fraud, or willful wrong[.]" (¶ 208.) As detailed above, Twitter is not a "common carrier." (*See* Section V, *supra*.) Moreover, courts have squarely held that this precise provision is enforceable and precludes a breach of contract claim. *Murphy*, 60 Cal. App. 5th at 36–37.

[7] Plaintiffs' argument that Twitter's failure to "label[]" or "flag" his Tweets acted as a "waiver" of Twitter's five-strike policy is misguided—there was no "intentional relinquishment of a known right" (¶ 117), particularly where Twitter stated only that it "*may* place a label on" Tweets, not that it would invariably flag each strike. (¶ 97.) *See Daniels*, 2021 WL 1222166, at *8 (rejecting breach of contract claim based on "failure to inform [plaintiff] when one of his videos is flagged or removed" absent "an unqualified promise to notify" Plaintiff). Plaintiff's fleeting assertion that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

1        Plaintiff also asserts that, even if Twitter had the right to terminate his account for any

2  reason, "Twitter did not cite" this right "to justify banning Mr. Berenson from its platform." (¶ 133.)

3  That is immaterial. Courts have consistently held that contractual language giving a platform

4  complete discretion to remove content or suspend accounts precludes a breach of contract claim,

5  even in instances where platforms provided other, specific reasons to users for removal decisions.

6  *See, e.g.*, *Daniels*, 2021 WL 1222166, at *2 (holding discretionary-removal clause in YouTube

7  Terms of Service precluded breach of contract claim based on video's removal for violating

8  platform's "Community Guidelines"); *Murphy*, 60 Cal. App. 5th at 35 (similar as to Twitter account

9  suspension for violation of "Hateful Conduct" policy); *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d

10  1215, 1218–20 (N.D. Cal. 2011) (similar as to PayPal account suspension for security reasons).

11  **IX.**    **PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL (COUNT VI)**

12        Plaintiff's claim for promissory estoppel likewise fails. A promissory estoppel claim

13  "requires: (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise was

14  made; (3) that the reliance be reasonable and foreseeable; and (4) injury caused by the reliance."

15  *Sun v. Wells Fargo Bank, Nat'l Ass'n*, 2014 WL 1245299, at *4 (N.D. Cal. Mar. 25, 2014). Plaintiff

16  alleges that the vague observations and equivocal statements alleged in the Complaint amounted to

17  a promise not to take action involving his account, to give him advance notice of any enforcement

18  actions, and to interpret Twitter's rules as to allow his commentary. (¶ 106).[8] But those statements

19  contain no commitment of any kind and fall far short of "clear and unambiguous" language

20  necessary to create a legally enforceable promise. Plaintiff similarly cannot establish that he

21  reasonably relied on these statements. His claim must be dismissed.[9]

---

Twitter was "bound to apply" the five-strike policy "objectively and rationally" under "California's duty of good faith and fair dealing" is meaningless. (¶ 203.) Such a duty cannot "be read to prohibit a party from doing that which is expressly permitted by an agreement." *Dunkel v. eBay Inc.*, 2014 WL 1117886, at *5 (N.D. Cal. Mar. 19, 2014) (citation omitted).

[8] Plaintiff's articulation of this promise varies throughout the Complaint. (*See, e.g.*, ¶ 3 (alleging Twitter promised Plaintiff "he would continue to enjoy access to the platform"); ¶ 110 (alleging Twitter promised Plaintiff "his work was not being targeted").)

[9] In addition to these multiple grounds for dismissal, Plaintiff also has failed to allege that he suffered any specific "injury caused by the reliance." Plaintiff's assertion that, because of Borrman's statements, he "continu[ed]" to use Twitter, "as opposed to investing time and attention on other available platforms" (¶ 215), fails to demonstrate "a sufficient change of position in reliance on defendant's [alleged] promise." *Panaszewicz v. GMAC Mortg., LLC*, 2013 WL 2252112, at *5 (N.D. Cal. May 22, 2013).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### A.   Plaintiff Alleges No Promise.

No statement identified in the Complaint can reasonably be interpreted as a promise to do anything, let alone with the certainty and clarity required to transform the statement into a legally actionable promise. *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 417 (2015) (promissory estoppel requires an "assurance that a person will or will not do something"). Such a statement must also be "sufficiently definite[,]" with a clear "scope of the duty" and "limits of performance[,]" *Zierolf v. Wachovia Mortg.*, 2012 WL 6161352, at *7 (N.D. Cal. Dec. 11, 2012) (citation omitted), including a definite duration to perform on the promise, *Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, 2015 WL 13917733, at *3 (C.D. Cal. June 3, 2015). No allegation in the Complaint meets this standard. Nor can Plaintiff save these non-actionable allegations by claiming that they "amplified the general promises contained in the five-strike policy." (¶ 211).  Promissory estoppel is not available where a "valid contract . . . governs the same subject matter as the alleged promise."  *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009).

**Generalized Goal Statements:** Plaintiff challenges statements expressing Twitter's general approach to COVID-19 content: that Borrman told Plaintiff that Twitter was "taking a 'nuanced approach' to discussion around COVID-19," "'trying to make sure that factual debate finds a way through the emotion,'" and "trying to avoid appearing as though we're saying one treatment or solution is good or bad." (¶ 210(b), (c), (d).) Borrman's vague, equivocal beliefs as to what Twitter was "trying to" do as a general policy are not actionable promises as to specific content. *See, e.g.*, *Roots Ready Made Garments v. Gap Inc.*, 2008 WL 239254, at *7 (N.D. Cal. Jan. 28, 2008) (that a defendant stated it "placed 'high priority' on product development" was "too indefinite to be actionable for promissory estoppel" (citation omitted)).

**Statements of Past Action, Not Future Promises:** Plaintiff alleges that Borrman told him that Plaintiff's "name ha[d] never come up in the discussions around [Twitter's enforcement] policies." (¶¶ 110, 210(h).) But such a statement of past action is not a promise of future results. *See Div. of Lab. L. Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 272 (1977) (employer's mention of its "past practice of paying an annual Christmas bonus" did not promise future bonuses). Likewise, Borrman's alleged comment that Plaintiff "was raising 'nuanced points'" about Twitter's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

*policies* (¶¶ 81, 210(a)) said nothing at all about Plaintiff's *Tweets*, let alone assured Plaintiff that *future* Tweets regarding COVID-19 would comply with Twitter's policies. *See GoEngineer, Inc. v. Autodesk, Inc.*, 2002 WL 243603, at *7 (N.D. Cal. Feb. 14, 2002) ("encourage[ment]" and "praise" for current work are "not clear and unambiguous promises").

**Statement Describing How System Works:**   Next, Plaintiff cites Borrman's alleged statement that Twitter was "leading with labeling here, rather than simply deciding between leave up/take down" (¶¶ 84, 210(e))—that is, that Twitter "may use labels and warning messages to provide additional explanations" for "false or misleading content" as opposed to removing content (¶¶ 74–75). Ninth Circuit precedent makes clear that such a statement is "simply a general description" of Twitter's practices and "contains no promissory language." *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (rejecting contract claim based on statement by eBay that, "We are not involved in the actual transaction between buyers and sellers.").

**Statements of Predictions, Not Promises:**   Finally, Plaintiff challenges statements that were vague predictions, not certain guarantees, of what was probable or likely to occur in the future. In particular, Borrman's statement that "Twitter did not '*expect* that you will see major change in how we are addressing things going forward'" (¶ 210(f)) (emphasis added), is conjecture couched in uncertainty, not a clear promise. *See Heredia v. Wells Fargo Bank*, 2016 WL 4608238, at *4 (N.D. Cal. Sept. 6, 2016) (an expression that a positive outcome is "most likely . . . falls far short of a clear promise"). Likewise, Borrman's statement that Plaintiff's hypothetical Tweets "*should not be an issue at all*" (¶ 210(g)) (emphasis added) is a prediction wholly dependent on the actual wording of Plaintiff's future Tweets, not a firm promise. [10] *Aguinaldo v. Ocwen Loan Servicing, LLC*, 2012 WL 3835080, at *4 (N.D. Cal. Sept. 4, 2012) (dismissing promissory estoppel claim based on "conditional" predictions of future outcomes). And Borrman's alleged offer to Plaintiff that he would "***try*** to ensure you're given a heads up before an action is taken" (¶ 210(i) (emphasis added)) is both vague as to what was being promised and framed in uncertain and equivocal terms. Indeed, the word "try" underscored Borrman's immediately subsequent caution that he was "not

---

[10] To be clear, this generalized observation from Borrman allegedly came in response to Plaintiff's speculating that he intended to post about "clinical trial data" and "mandating [the vaccine] for adults" (¶¶ 102–03); it was not a request for Borrman to preclear individual Tweets.

Cooley LLP
Attorneys at Law
San Francisco

always made aware" of enforcement actions in advance. (¶ 110); *see also Roots Ready*, 2008 WL 239254, at \*7 (holding "vague intention to 'attempt' to continue a relationship cannot serve as a basis for a promissory estoppel claim"). Each of these "vague, general" statements "of indeterminate application" fail to state a clear promise or commitment. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 446 (9th Cir. 1992) (citation omitted).

### B.   Plaintiff Fails to Plead Reasonable Reliance.

Plaintiff's claim independently fails because he does not plausibly allege that his reliance on the alleged statements was reasonable and foreseeable. A plaintiff is not entitled to the benefit of his own misinterpretation, willful blindness, or overreaction; a "misguided belief" or "hopeful expectation . . . in relying on a statement on which no reasonable person would rely is [therefore] not justifiable reliance." *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1179 (2016). Plaintiff's reliance here was not reasonable or foreseeable, for three independent reasons.

*First*, it was not reasonable or foreseeable for Plaintiff to interpret Borrman's observations as an assurance that Plaintiff's future Tweets would comply with Twitter policies, given that Borrman expressly stated that he was unable to make precisely that assurance. Borrman—a communications executive—made clear to Plaintiff he played no role in enforcement decisions and was often not even "*made aware of them*." (¶ 110.) Plaintiff cannot have reasonably relied on qualified statements by an employee who was transparent about his lack of authority. *See Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 972 F. Supp. 1275, 1285 (C.D. Cal. 1997) (no promissory estoppel claim where party was "aware" that representative it was dealing with lacked authority to make a binding promise); *Glover v. Cal. State Univ. Fresno*, 2015 WL 5734418, at \*5 (E.D. Cal. Sept. 28, 2015) ("manifestly unreasonable" to rely on "mere puffery and encouragement" from individual who, at best, "promised an outcome that was clearly outside of her control").

*Second*, it was not reasonable for Plaintiff to rely on statements expressing no clear commitment, couched in uncertain and qualified terms, such as "try," "should," or "expect," as firm assurances Twitter would not "take action against his account." (¶ 106.) Courts are clear "mere hopeful expectation cannot be equated with the necessary justifiable reliance." *Faulks v. Wells Fargo & Co.*, 231 F. Supp. 3d 387, 405 (N.D. Cal. 2017) (holding that company's statements that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

plaintiff should submit documents, which it would "properly review," was not a guarantee of a positive outcome); *see also Foster v. Reverse Mortg. Sols., Inc.*, 2020 WL 4390374, at *8 (C.D. Cal. May 13, 2020) (not reasonable for plaintiff to assume that a bank's promise to "consider her" request for repayment plan was an unambiguous promise it would "accept" the request). However much Plaintiff may have wished that Twitter would promise it would not enforce its Terms against Plaintiff's future Tweets, Borrman's qualified language cannot reasonably be interpreted that way.

*Third*, Plaintiff's reliance could not have been reasonable given that Twitter's Terms contradicted Plaintiff's claimed understanding that Twitter was agreeing not to take action against his account. "[R]eliance on representations that contradict a written agreement is not reasonable." *Malmstrom v. Kaiser Aluminum & Chem. Corp.*, 187 Cal. App. 3d 299, 319 (1986); *see Blue Diamond Renewables, LLC v. GE Energy Fin. Servs.*, 2013 WL 5427991, at *6 (C.D. Cal. Sept. 25, 2013) ("[R]egardless of any communication Plaintiff ultimately alleges occurred, the clear language of the [contract] disclaiming any promise to contract belies any reasonable reliance."). As the Terms make clear, Twitter "may suspend or terminate your account or cease providing you with all or part of [its] Services at any time for any or no reason[.]" (¶ 133.) *See Murphy*, 60 Cal. App. 5th at 39 (rejecting promissory estoppel against Twitter based on "vague" statements Twitter would not "'censor' content," as Twitter "expressly reserved the right to . . . suspend or terminate accounts 'for any or no reasons'"); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 598 (S.D.N.Y. 2018) (rejecting New York promissory estoppel claim where reliance was "unreasonable in light of the clear disclaimer in the Terms of Service").

*     *     *

Plaintiff's promissory estoppel claim fails at all levels and should be dismissed.  His assertion that Twitter promised not to take action against his account relies on Borrman's vague, speculative observations, which promised nothing and had no connection to enforcement decisions generally, let alone to Plaintiff's specific Tweets. And his reliance is undermined by the very statements at issue, including Borrman's express caution that he lacks authority over enforcement decisions, as well as the underlying Terms which contradict Plaintiff's alleged understanding.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

## X.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS (COUNT VIII)

Plaintiff's claim for unjust enrichment must be dismissed because it is premised on the same claims as his contract claim. (*Compare* ¶ 225 (alleging unjust enrichment from suspension of Plaintiff's account for "violating the platform's medical misinformation rules.") *with* ¶ 205 (alleging "Twitter breached its contract" by suspending Plaintiff for "violat[ing] the company's COVID-19 misinformation rules").) Where, as here, the "unjust enrichment claim is based on precisely the same allegations as [a] purported breach of contract claim," the court must "dismiss[] the unjust enrichment claim." *Daniels*, 2021 WL 1222166, at *10 (dismissing unjust enrichment claim based on removal of plaintiff's video for violation of YouTube's terms and conditions).

## XI.   THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS

Beyond Plaintiff's failure to state a claim, which alone is fatal and dispositive, his claims are also barred by the First Amendment. The activity challenged by Plaintiff—Twitter's labeling his posts and subsequently refusing to continue hosting and disseminating information it believed was misleading and harmful—falls squarely within the First Amendment's protections for Twitter's *own* speech and editorial judgment. Because Plaintiff's suit "directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest," it "is based on conduct in furtherance of free speech rights[.]" *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 424–25 (9th Cir. 2014).

Twitter's own statements, such as allegedly placing a "misleading" label on Plaintiff's Tweets, are unquestionably protected speech. *See Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1008 (E.D. Cal. 2017) (noting that the owner of a website "has a First Amendment right to distribute and facilitate protected speech on the site."). Twitter's decision to suspend and deactivate Plaintiff's account is likewise protected First Amendment activity. As Judge Breyer recently articulated in *O'Handley*, "[l]ike a newspaper or a news network, Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." 2022 WL 93625, at *14. This kind of editorial decision-making is quintessential First Amendment speech, since "a platform's decision to publish or not publish particular Tweets says something about what that platform represents." *Id.* at *15. Forcing Twitter

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

1   to carry Plaintiff's messages would accordingly deprive it of the "exercise of editorial control and

2   judgment" guaranteed under the First Amendment.[11] *Miami Herald*, 418 U.S. at 258.

3   **XII.   SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS PLAINTIFF'S CLAIMS**

4         Section 230 further bars Plaintiff's claims. Section 230 protects media platforms when they

5   exercise "a publisher's traditional editorial functions" such as "deciding whether to publish,

6   *withdraw,* postpone, or alter content," *Barnes*, 570 F.3d at 1102 (cleaned up), or determining

7   "whether or not to prevent" content from being posted, *Fair Hous. Council of San Fernando Valley*

8   *v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008) (en banc). It applies to any claim

9   where: "(1) Defendant is a provider or user of an interactive computer service; (2) the information

10  for which Plaintiff seeks to hold Defendant liable is information provided by another information

11  content provider; and (3) Plaintiffs' claim seeks to hold Defendant liable as the publisher or speaker

12  of that information." *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1092–

13  93 (N.D. Cal. 2015) (citation and internal quotation marks omitted). Each prong is satisfied here.

14        First, Twitter is indisputably an "interactive computer service[]." *Fields v. Twitter, Inc.*, 217

15  F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), *aff'd,* 881 F.3d 739 (9th Cir. 2018); *Murphy*, 60 Cal.

16  App. 5th at 25. Second, Plaintiff's claims seek to hold Twitter liable based on its refusal to publish

17  his Tweets, which are content "provided by another information content provider." *See, e.g.*,

18  *Murphy*, 60 Cal. App. 5th at 26. Third, each cause of action seeks to hold Twitter "liable as the

19  publisher" of Plaintiff's Tweets. As the Ninth Circuit has explained, "what matters is not the name

20  of the cause of action," but rather whether—as here—each cause seeks to impose liability for

21  "publishing conduct"—"reviewing, editing, and deciding whether to publish or to withdraw from

22  publication third-party content." *Barnes*, 570 F.3d at 1101-03. (*See, e.g.*, ¶¶ 160, 166–67, 178–80,

23  188–89, 192, 205, 211–12, 220, 225.) As such, Section 230 requires dismissal. *Murphy*, 60 Cal.

24

25  _____

[11] Courts have uniformly recognized this "right to moderate" for social media platforms. *See*
26  *O'Handley*, 2022 WL 93625, at *14–15; *NetChoice*, 2021 WL 5755120, at *7 ("Social media
    platforms have a First Amendment right to moderate content disseminated on their
27  platforms."); *Mac Isaac v. Twitter, Inc.*, 2021 WL 3860654, at *6–7 (S.D. Fla. Aug. 30,
    2021) (same); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 202 (2017) (same); *La'Tiejira v.
28  Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (same); *Jian Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014) (same, for curation of search engine results).

App. 5th at 41–42 (affirming dismissal of Complaint in its entirety under Section 230).[12]

Plaintiff's attempts to plead around Section 230 are meritless. He first argues that his breach of contract and promissory estoppel claims fall outside of Section 230. Not so. Plaintiff's breach of contract claim alleges that Twitter breached its Terms by suspending his account. (*See* ¶¶ 199, 205.) This attempted repackaging of a claim arising from publishing conduct is squarely precluded by *Barnes*, 570 F.3d at 1107, and was recently rejected again in *Murphy*, 60 Cal. App. 5th at 28–34. Likewise, Plaintiff's promissory estoppel claim bears little resemblance to the facts in *Barnes*, where the Ninth Circuit held that Section 230 did not apply because the defendant had made a particularized promise, distinct from the platform terms, to take down specific material. 570 F.3d at 1099 (citing employee's specific guarantee to "personally walk the statements over to the division responsible for stopping unauthorized profiles and they would take care of it"). Here, however, Plaintiff cites only generalized statements *interpreting* Twitter's approach under its Terms—activity falling squarely within Section 230's ambit. *See Murphy*, 60 Cal. App. 5th at 29–30 (Section 230 forecloses promissory estoppel claim centered on "Twitter's interpretation and enforcement of its own general policies rather than breach of a specific promise").[13]

**XIII.   CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

---

[12] Courts have applied Section 230 to each claim at issue here, in analogous circumstances. *Coffee v. Google, LLC*, 2021 WL 493387, at *8 (N.D. Cal. Feb. 10, 2021) (unjust enrichment); *Domen*, 433 F. Supp. 3d at 605 (California Constitution); Order Sustaining Demurrer to First Amended Petition without Leave to Amend at 3 n.3, *Constituents for Thoughtful Gov't v. Twitter, Inc.*, No. CGC-20-583244 (Cal. Super. Ct. July 13, 2020), Ex. 1 (California Common Carrier law); *Ebeid*, 2019 WL 2059662, at *3 (First Amendment); *King v. Facebook, Inc.*, 2019 WL 4221768, at *1, n.1, *3–5 (N.D. Cal. Sept. 5, 2019) (UCL); *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053–54 (9th Cir. 2019) (Lanham Act false advertising claims); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *3–4 (breach of contract and promissory estoppel).

[13] Contrary to Plaintiff's assertion, Section 230 does not "present[] First Amendment challenges." (¶ 56; *see also* ¶ 10.) Section 230 "does not ban or restrict speech" but rather allows companies "to establish standards of decency without risking liability for doing so." *Lewis v. Google, LLC*, 461 F. Supp. 3d 938, 953 (N.D. Cal. 2020) (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 25 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: February 11, 2022

264179151

COOLEY LLP


By:  /s/ Kathleen R. Hartnett
        Kathleen R. Hartnett

Attorneys for Defendant
TWITTER, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 26 -

TWITTER'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 3:21-CV-09818-WHA