COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
KATHLEEN R. HARTNETT (314267)
(khartnett@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
REECE TREVOR (316685)
(rtrevor@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:     +1 415 693 2000
Facsimile:     +1 415 693 2222

COOLEY LLP
ANGELA DUNNING (212047)
(adunning@cooley.com)
ALEX KASNER (310637)
(akasner@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX BERENSON,<br><br>              Plaintiff,<br><br>     v.<br><br>TWITTER, INC.,<br><br>              Defendant. | Case No. 3:21-cv-09818-WHA<br><br>**TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: April 28, 2022; 8:00 am |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFF FAILS TO PLEAD STATE ACTION TRIGGERING THE FIRST AMENDMENT ...................................................................................................... 1

II.   *PRUNEYARD*'S DEFINITION OF STATE ACTION DOES NOT APPLY TO TWITTER ............................................................................................................... 3

III.  TWITTER IS NOT A COMMON CARRIER ................................................... 4

IV.  PLAINTIFF'S LANHAM ACT CLAIM IS PROCEDURALLY DEFECTIVE AND MERITLESS ............................................................................................. 5

V.   PLAINTIFF'S UNFAIR COMPETITION LAW CLAIM FAILS .................... 6

VI.  PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS ............................ 8

VII. PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS ON MULTIPLE GROUNDS. ...................................................................................................... 10

     A.    No Clear and Unambiguous Promise ................................................. 10

     B.    No Reasonable Reliance ..................................................................... 12

VIII. PLAINTIFF'S UNJUST ENRICHMENT CLAIM REMAINS FATALLY UNINTELLIGIBLE .......................................................................................... 13

IX.  PLAINTIFF DOES NOT REBUT TWITTER'S FIRST AMENDMENT DEFENSE ......................................................................................................... 14

X.   PLAINTIFF FAILS TO REBUT TWITTER'S SECTION 230 DEFENSE ...... 14

XI.  CONCLUSION .................................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Albertson's, Inc. v. Young*,
   107 Cal. App. 4th 106 ....................................................................................... 4

*Allergia, Inc. v. Bouboulis*,
   2017 WL 2547225 (S.D. Cal. June 13, 2017) ................................................... 11

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) ............................................................................................. 1

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ........................................................................... 6

*Atkinson v. Facebook Inc.*,
   No. 3:20-cv-05546, ECF No. 75 (N.D. Cal. Dec. 7, 2020) ................................ 14

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
   2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ..................................................... 11

*Barnes v. Yahoo!, Inc.*,
   2009 WL 4823840 (D. Or. Dec. 11, 2009) ........................................................ 12

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ...................................................................... 12, 15

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................. 10

*Brittain v. Twitter, Inc.*,
   2019 WL 2423375 (N.D. Cal. June 10, 2019) .................................................... 14

*Cell-Crete Corp. v. Lexington Ins. Co.*,
   2014 WL 12601011 (C.D. Cal. July 30, 2014) .................................................... 9

*Children's Health Def. v. Facebook Inc.*,
   546 F. Supp. 3d 909 (N.D. Cal. 2021) ............................................................. 2, 6

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   43 Cal. 4th 375 (2008) ...................................................................................... 10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) .............................................................................. 6

*Coffee v. Google, LLC*,
   2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ................................................. 7, 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Cox v. Twitter, Inc.*,
2019 WL 2513963 (D.S.C. Feb. 8, 2019) ................................................................. 8

5

*Daniels v. Alphabet Inc.*,
2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ...................................................... 2, 8

6

7

*Darnaa, LLC v. Google, Inc.*,
2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ...................................................... 9, 10

8

9

*Doe v. Uber Techs., Inc.*,
184 F. Supp. 3d 774 (N.D. Cal. 2016) ..................................................................... 4

10

*Doe v. Uber Techs., Inc.*,
2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ......................................................... 5

11

12

*Doe v. Uber Techs., Inc.*,
551 F. Supp. 3d 341 (S.D.N.Y. 2021) .................................................................. 4, 5

13

14

*Doe v. Uber Techs., Inc.*,
No. 3:19-cv-03310-JSC, ECF No. 13 (N.D. Cal. July 24, 2018) ............................. 5

15

*Domen v. Vimeo, Inc.*,
433 F. Supp. 3d 592 (S.D.N.Y. 2020) ................................................................ 4, 15

16

17

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................................... 8

18

19

*F.C.C. v. League of Women Voters of Cal.*,
468 U.S. 364 (1984) ................................................................................................. 5

20

*Facebook, Inc. v. Profile Technology, Ltd.*,
2014 WL 492369 (N.D. Cal. Feb. 5, 2014) ............................................................. 9

21

22

*Fashion Valley Mall, LLC v. National Labor Relations Board*,
42 Cal. 4th 850 (2007) ............................................................................................. 3

23

24

*Faulks v. Wells Fargo & Co.*,
231 F. Supp. 3d 387 (N.D. Cal. 2017) ................................................................... 13

25

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................. 6, 7

26

27

*GoEngineer, Inc. v. Autodesk, Inc.*,
2002 WL 243603 (N.D. Cal. 2002) ....................................................................... 11

28

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n.*,
26 Cal. 4th 1013 (2001) ........................................................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Gomez v. Super. Ct.*,
   35 Cal. 4th 1125 (2005) ........................................................................................... 5

5

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
   238 Cal. App. 4th 124 (2015) .................................................................................. 7

6

7

*Henrietta Mine, LLC v. A.M. King Indus., Inc.*,
   2021 WL 4942880 (E.D. Cal. Oct. 22, 2021) .......................................................... 8

8

9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   273 F. Supp. 3d 1099 (N.D. Cal. 2017) ................................................................... 4

10

*Horne v. Harley-Davidson, Inc.*,
   660 F. Supp. 2d 1152 (C.D. Cal. 2009) ................................................................... 9

11

12

*Huber v. Biden*,
   2022 WL 827248 (N.D. Cal. Mar. 18, 2022) ............................................... 2, 14, 15

13

14

*Song Fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ..................................................................... 8

15

*Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*,
   2012 WL 12884451 (C.D. Cal. Mar. 6, 2012) ....................................................... 10

16

17

*Informed Consent Action Network v. YouTube LLC*,
   2022 WL 278386 (N.D. Cal. Jan. 31, 2022) ........................................................ 2, 3

18

19

*Kariguddaiah v. Wells Fargo Bank, N.A.*,
   2010 WL 2650492 (N.D. Cal. July 1, 2010) ............................................................ 7

20

*Kouretas v. Nationstar Mortg. Holdings, Inc.*,
   2015 WL 1751750 (E.D. Cal. Apr. 16, 2015) ........................................................ 12

21

22

*Kruse v. Bank of Am.*,
   202 Cal. App. 3d 38 (1988) ................................................................................... 12

23

24

*Laguna Publ'g Co. v. Golden Rain Found.*,
   131 Cal. App. 3d 816 (1982) ................................................................................... 3

25

*Lange v. TIG Ins. Co.*,
   68 Cal. App. 4th 1179 (1999) ................................................................................ 10

26

27

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ....................................................... 15

28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ................................................................................................ 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Maffick LLC v. Facebook, Inc.*,
    2021 WL 1893074 (N.D. Cal. May 11, 2021) ............................................... 6

5

*Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*,
    141 S. Ct. 2038 (2021) ................................................................................... 4

6

7

*Malmstrom v. Kaiser Aluminum & Chem. Corp.*,
    187 Cal. App. 3d 299 (1986) ........................................................................ 13

8

9

*Maples v. SolarWinds, Inc.*,
    50 F. Supp. 3d 1221 (N.D. Cal. 2014) .......................................................... 14

10

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) ................................................................................. 4, 14

11

12

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) .......................................................... 8

13

14

*Mortg. Elec. Registration Sys., Inc. v. Koeppel*,
    2020 WL 1233925 (N.D. Cal. Mar. 13, 2020) ............................................... 5

15

*Morton v. Twitter, Inc.*,
    2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ................................................. 8

16

17

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ................................................................... *passim*

18

19

*O'Handley v. Padilla*,
    2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ..................................................... 2

20

*Obado v. Magedson*,
    2014 WL 3778261 (D.N.J. July 31, 2014) .................................................... 15

21

22

*Obado v. Magedson*,
    612 F. App'x 90 (3d Cir. 2015) .................................................................... 13

23

24

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017) ................................................................................... 4

25

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ...................................................................... 1, 4

26

27

*Press Rentals, Inc. v. Genesis Fluid Sols., Ltd.*,
    2014 WL 31251 (N.D. Cal. Jan. 3, 2014) ....................................................... 9

28

*Railway Employees Department v. Hanson*,
    351 U.S. 225 (1956) ...................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- v -

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

**TABLE OF AUTHORITIES**
(continued)

Page

*Red Lion Broadcasting Co. v. F.C.C.*,
    395 U.S. 367 (1969) ........................................................................................................ 5

*Robins v. Pruneyard Shopping Center*,
    23 Cal. 3d 899 (1979) .................................................................................................. 3, 4

*Shvarts v. Budget Grp., Inc.*,
    81 Cal. App. 4th 1153 (2000) ........................................................................................ 9

*Squaw Valley Ski Corp. v. Super. Ct.*,
    2 Cal. App. 4th 1499 (1992) .......................................................................................... 5

*Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
    2012 WL 5447959 (C.D. Cal. Oct. 4, 2012) ................................................................ 10

*TML Recovery, LLC v. Humana Inc.*,
    2018 WL 8806104 (C.D. Cal. Nov. 26, 2018) .............................................................. 10

*Twitter, Inc. v. Paxton*,
    26 F.4th 1119 (9th Cir. 2022), *pet. for reh'g and reh'g en banc filed*, Dkt. No.
    57 (Mar. 30, 2022). ...................................................................................................... 14

*US Ecology, Inc. v. California*,
    92 Cal. App. 4th 113 (2001) ........................................................................................ 11

*Wagner v. Glendale Adventist Medical Center*,
    216 Cal. App. 3d 1379 (1989) ....................................................................................... 9

*Wash. Post v. McManus*,
    944 F.3d 506 (4th Cir. 2019) ......................................................................................... 5

*West v. JPMorgan Chase Bank, N.A.*,
    214 Cal. App. 4th 780 (2013) ...................................................................................... 11

**Statutes**

47 U.S.C. § 230 ....................................................................................................... 14, 15

Cal. Civ. Code § 2168 ................................................................................................... 5

Fed. R. Civ. P. 9(b) .................................................................................................... 5, 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vi -

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

Plaintiff's Complaint—which, among other things, seeks to force Twitter to publish content that violates its policies—should be dismissed with prejudice based on numerous dispositive and incurable defects. Rather than contend with controlling adverse law and the limits of his own factual allegations (and lack thereof), Plaintiff's Opposition mischaracterizes the law and runs from his own pleading, making clear that dismissal is warranted. For instance, Plaintiff points to an assortment of generalized statements from federal officials to support his First Amendment claim but cannot overcome established law that the publicly expressed views of government officials are not themselves state action. Likewise, having failed to identify a clear and unambiguous promise made by Twitter to support his contract and promissory estoppel claims, Plaintiff incorrectly argues that this Court can infer such a promise from "context." But the law is clear that while context may aid in filling out the details of an already unambiguous promise, it cannot create one from whole cloth. Plaintiff similarly fails to overcome the deficiencies outlined in Twitter's Motion with respect to each of the other claims in the Complaint. Plaintiff has not, and cannot, alleged facts sufficient to state a claim and this Court should dismiss the Complaint with prejudice.

## I.   PLAINTIFF FAILS TO PLEAD STATE ACTION TRIGGERING THE FIRST AMENDMENT

"[A] private entity hosting speech on the Internet is not a state actor," *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020), and the Complaint fails to allege Twitter's actions were "fairly attributable to the [s]tate," *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

Plaintiff contends that Twitter "acted in concert with the government[.]"[1] (Opp. at 3.) His scattershot allegations of joint action include that: (1) senior officials criticized the spread of COVID-19 misinformation in July 2021 and urged social media companies to moderate such content (*id.* at 3-4); (2) a senior Biden Administration official was "specifically aware of [Plaintiff]" (*id.* at 4); and (3) a Twitter executive commented to Plaintiff, months earlier, that certain points he raised "should not be an issue at all," and that Plaintiff's "name ha[d] never come up in discussions around" Twitter's policies (*id.* at 3). Plaintiff asserts that Twitter's suspension of his account was an "abrupt change" that must have been due to government action. (*Id.* at 5.)

---

[1] Plaintiff's argument "that Twitter was a 'willful participant in joint action'" indicates that he relies on this test only. (Opp. at 5 (citation omitted).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

These allegations do not establish that "the state has so far insinuated itself into a position of interdependence with [Twitter] that it must be recognized as a joint participant." *Huber v. Biden*, 2022 WL 827248, at *7 (N.D. Cal. Mar. 18, 2022) (citation omitted) (dismissing similar complaint with prejudice). Rather, Plaintiff concedes the opposite, admitting the White House stated, "[a]ny decision about platform usage and who should be on the platform is orchestrated and determined by private-sector companies," "***not the federal government***[.]" (¶ 125 (emphasis added).)

Plaintiff's remaining assertion—that Dr. Anthony Fauci knew of his existence and disagreed with his views—changes nothing. This allegation does not create a plausible inference that Dr. Fauci or other officials were "personally involved in or directed the removal" of Plaintiff's Tweets. *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *7 (N.D. Cal. Mar. 31, 2021). No court accepts Plaintiff's thesis that "mere acquiescence by private entities to the government's encouragement of broad policy is sufficient to establish state action[.]" *Huber*, 2022 WL 827248, at *6. Rather, courts uniformly reject such claims. For example, in *Huber*, as here, the plaintiff alleged that Twitter and the government conspired to suspend her account after she violated Twitter's COVID-19 misinformation policy. But her allegations that Twitter acknowledged "working in partnership with the White House to elevate authoritative information" simply did "not equate to working in concert[.]" 2022 WL 827248, at *2, *7. Similarly, in *Informed Consent Action Network v. YouTube LLC*, the court held that "media reports of unspecified collaboration" between government agencies and social media companies were insufficient to plead state action. 2022 WL 278386, at *4 (N.D. Cal. Jan. 31, 2022) (hereinafter "*ICAN*"). Court after court agrees. *See O'Handley v. Padilla*, 2022 WL 93625, at *10 (N.D. Cal. Jan. 10, 2022); *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 927-33 (N.D. Cal. 2021); Mot. at 5-7 (collecting cases).

Plaintiff attempts to distinguish most of these cases by claiming they "lack both the changes in the platforms' position on content and the personal assurances present here." (Opp. at 4–5.) Both arguments fail. In each case, the plaintiffs were permitted to post on the defendant's social media service until they were not, and they alleged that before their suspensions, officials made statements criticizing posts like theirs. The *ICAN* plaintiffs, for example, alleged that "[p]rior to the COVID-19 pandemic, Defendants had 'almost never' objected to or removed ICAN's postings" and that

they were suspended only after government officials criticized COVID misinformation. 2022 WL 278386, at *1; *see also* Mot. at 5-7 (collecting cases). Plaintiff's argument based on alleged "personal assurances" is also meritless. (Opp. at 3.) Plaintiff fails to allege a promise or any statement plausibly supporting the inference that Twitter's decision was not its own. (*See* Mot. at 19-21; *infra* at 13-14). And his speculation that the timing of his suspension meant it occurred at the "government's behest" (Opp. at 5), is a "post hoc fallacy." *ICAN*, 2022 WL 278386, at *7 ("a temporal relationship . . . does not establish a causal relationship" (citation omitted)).

## II.    *PRUNEYARD*'S DEFINITION OF STATE ACTION DOES NOT APPLY TO TWITTER

Twitter is not akin to the "public area" at issue in *Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899, 909 (1979) (citation omitted).[2] *Pruneyard* applies only to real properties with "many of the attributes of a municipality," thus justifying their treatment as quasi-governmental. *Laguna Publ'g Co. v. Golden Rain Found.*, 131 Cal. App. 3d 816, 839 (1982). Twitter—a restricted platform that provides just one of many online outlets for speech—is not one of them. (Opp. at 9.)

**First**, Plaintiff's argument that Twitter is a "quasi-public property" (Opp. at 7) fails because Plaintiff does not dispute that Twitter's "invitation" to the public is conditioned on users' agreement that Twitter may moderate their content or deny them access at any time, for any reason. (¶¶ 132-33.) This ends the inquiry; *Pruneyard* only extends to private property that is "freely and openly accessible to the public." *Golden Gateway*, 26 Cal. 4th at 1032. Contrary to Plaintiff's claims, Twitter is not like the shopping centers in *Pruneyard* and *Fashion Valley Mall, LLC v. National Labor Relations Board*, 42 Cal. 4th 850, 870 (2007), which invited anyone onto their premises without condition.[3] Nor is it like the gated community in *Laguna*, where the defendant had no "authority to decide what persons or publications shall be afforded *uninvited* entry[.]" 131 Cal. App. 3d at 831. Plaintiff's citations to Twitter's mission statement and its former CEO's statements (Opp. at 7) are unavailing. A company's "representation that it is committed to freedom of

---

[2] Plaintiff wrongly asserts that California's free speech clause "runs against the world[.]" (Opp. at 7). The California Supreme Court has rejected this notion as "nonbinding dictum" and held that the free speech clause is subject to "a state action limitation." *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n.*, 26 Cal. 4th 1013, 1029, 1031 (2001).
[3] Plaintiff notes that the *Pruneyard* defendants maintained a "policy" against "expressive activity" (Opp. at 8 (citation omitted)), but their shopping center was broadly "open to the public during shopping hours" without any requirement of agreeing to that policy. 23 Cal. 3d at 905.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

expression, or a single statement made by its executive . . . cannot somehow convert private property into a public forum" in the face of its terms of service. *Prager Univ.*, 951 F.3d at 999.

**Second**, Plaintiff argues that *Pruneyard*'s "logic applies even more strongly to Twitter" because it is akin to a "town square in the Internet age." (Opp. at 8-9.) No court has adopted this view, and if anything, Twitter's identity as a speech-specific platform **reinforces** its First Amendment right to moderate or label content and further distinguishes it from *Pruneyard*. Whereas in *Pruneyard*, "nothing suggested" that extending free speech protections would "unreasonably impair the value or use of the property as a shopping center," requiring Twitter to host speech from all comers would fundamentally alter the platform. *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106, 115 (cleaned up). This is no different from an unconstitutional "compulsion exerted by government on a newspaper to print that which it would not otherwise print." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256 (1974).

**Third**, Plaintiff fails to distinguish cases declining to apply *Pruneyard* to social media companies. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017); *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. 2020). He contends the websites in those cases were not "predicated on speech" (Opp. at 9), but neither court even hinted at such a rationale, and established law is the opposite. *See Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*, 141 S. Ct. 2038, 2047 (2021) (Snapchat videos constitute speech); *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) (equating Twitter and LinkedIn as forms of speech).

### III.   TWITTER IS NOT A COMMON CARRIER

Twitter does not offer to carry messages "generally and indifferently," for profit, and is thus not a common carrier. Indeed, Plaintiff does not dispute that Twitter's Terms[4] place numerous restrictions on who may use its services and how, but incorrectly argues that these restrictions are immaterial to the common carrier inquiry. The two cases upon which Plaintiff relies are inapposite. In both, "Uber did not make the argument that it had the ability to remove an Uber customer's riding privileges." *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 360 (S.D.N.Y. 2021); *see also Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 787 (N.D. Cal. 2016) ("[P]laintiffs do not allege,

---

[4] Capitalized terms have the same meaning defined in Twitter's Motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

nor does defendant counter, that an Uber *customer* may lose riding privileges."); Def.'s Mot. to Dismiss at 14, *Doe v. Uber Techs., Inc.*, No. 3:19-cv-03310-JSC, ECF No. 13 (N.D. Cal. July 24, 2018) (the only "condition" before the Court was "that one must download the 'Uber App' in order to summon a ride"); *Doe v. Uber Techs., Inc.*, 2019 WL 6251189, at *6 (N.D. Cal. Nov. 22, 2019) (same). In contrast, to use Twitter, one must agree to grant Twitter discretion to limit or suspend access at any time. *See Doe*, 551 F. Supp. 3d at 358 (distinguishing Plaintiff's cases and finding no common carrier status because "Uber can deactivate users at any time and for any reason.").

Facing overwhelming case law rejecting attempts to treat internet companies as common carriers, Plaintiff asserts "none of those [cases] dealt with [Civil Code] section 2168." (Opp. at 10.) But section 2168, California's common carrier provision, closely resembles other jurisdictions' laws, so California courts regularly "consider decisions from other states for their persuasive value" in interpreting the statute. *Squaw Valley Ski Corp. v. Super. Ct.*, 2 Cal. App. 4th 1499, 1507–09 & n.2 (1992) (citation omitted) (relying on other states' laws); *see also Gomez v. Super. Ct.*, 35 Cal. 4th 1125, 1137 (2005) (same).

Plaintiff also cannot evade the serious First Amendment problems with his common carrier argument. (Mot. at 10.) Relying on *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367 (1969), Plaintiff analogizes Twitter to a broadcast television or radio station, but this analogy is wholly inapt. (Opp. at 11.) "The fundamental distinguishing characteristic" justifying additional speech regulation of broadcast licensees "is that broadcast frequencies are a scarce resource that must be portioned out among applicants." *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 377 (1984) (cleaned up). "This justification, however, is inapposite for the virtually limitless canvas of the internet." *Wash. Post v. McManus*, 944 F.3d 506, 519 (4th Cir. 2019).

## IV.   PLAINTIFF'S LANHAM ACT CLAIM IS PROCEDURALLY DEFECTIVE AND MERITLESS

Plaintiff does not rebut Twitter's Rule 9(b) argument for dismissing the Lanham Act claim, which alone warrants dismissal. *See Mortg. Elec. Registration Sys., Inc. v. Koeppel*, 2020 WL 1233925, at *3 (N.D. Cal. Mar. 13, 2020) (arguments not opposed may be deemed conceded).

Plaintiff also fails to meaningfully address the substantive defects identified by Twitter. ***First***, as Plaintiff concedes, statements are only actionable under the Lanham Act if they amount

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

to "commercial speech," *i.e.*, "advertising or promotion." (Opp. at 12 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)). Plaintiff does not (and cannot) assert that Twitter's challenged statements meet this requirement—he admits just the opposite. (*See* Opp. at 12 (agreeing that "the statements themselves might not have offered a good or service").) And courts have rejected the argument that statements are commercial speech because they "were made in the context in which [plaintiff] offers his services—in and to the media—and to [his] actual and potential readers[.]" (*Id.*) *See Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *4 (N.D. Cal. May 11, 2021) (reaching "commonsense conclusion" that a fact-checking label is not "advertisement or promotion"); *Children's Health Def.*, 546 F. Supp. 3d at 935-36 (rejecting claim based on "false fact-check labels").[5]

**Second**, Twitter's challenged statements were either true or assertions of opinion; either way, they are not actionable. (*See* Mot. at 12–13.) Citing no authority, Plaintiff retorts that Twitter did not preface its statements with language like "its opinion" or "its view." (Opp. at 12.) Such prefatory language is not required. *See, e.g.*, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (comparative ratings that "purport[ed] to rely on scientific and objective criteria" were "not actionable"); *Coastal Abstract*, 173 F.3d at 731 (similar).

**Third**, the Opposition fails to identify any specific losses pled in the Complaint, much less any harm "flowing directly from" Twitter's alleged deception. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); Mot. at 13. Plaintiff asserts only an unpled "*possibility* that his following would have been even greater" and that Twitter's statements "continue[] to be cited against him and hurt his effort to gain readers" in unspecified ways. (Opp. at 12 (emphasis added).) Such "speculative proceedings" and "intricate, uncertain inquiries"—even if pled—could not support a Lanham Act claim. *Lexmark*, 572 U.S. at 140 (cleaned up); *Maffick*, 2021 WL 1893074, at *5 (unpled facts cannot be considered on a motion to dismiss).

## V.   PLAINTIFF'S UNFAIR COMPETITION LAW CLAIM FAILS

Citing *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), Plaintiff incorrectly

---

[5] Plaintiff also pleads no facts to show, as he must, that Twitter "is in commercial competition with plaintiff" or that its statements were made "for the purpose of influencing consumers to buy [Twitter's] goods or services[.]" (Opp. at 12.)

asserts that an alleged inability to promote his publications constitutes economic injury under the UCL. (Opp. at 13; ¶ 192.) In *Fraley*, the complaint pled an alleged injury—failure to pay compensation owed—that had already occurred as a result of Facebook's actions. 830 F. Supp. 2d at 812. Plaintiff, by contrast, alleges only the *possibility* of economic losses due to lost readership and sales, and he presents no specific facts establishing such losses would result from Twitter's statements and policies, as opposed to other factors.[6] (*See* ¶ 192.) Indeed, none of the Tweets that Twitter allegedly labeled said anything about book or subscriptions sales, making the link between Twitter's challenged statements and Plaintiff's purported injury even more tenuous. (*See* ¶¶ 188– 189 (listing contents of challenged statements).) *See Coffee v. Google, LLC*, 2021 WL 493387, at *10 (N.D. Cal. Feb. 10, 2021) (plaintiff failed to allege causation under UCL).

As to monetary relief, Plaintiff now argues for a restitutionary remedy that he failed to plead. (Opp. at 13 (asserting restitution based on alleged "interference with [Plaintiff's] access to his Twitter following" and "monetiz[ation of] his account"); *see* Mot. at 15.) This misplaced effort fails. Restitution is unavailable unless the defendant has (1) acquired property in which (2) the plaintiff has a vested "ownership interest." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 156 (2015) (citation omitted) (emphasis added). Plaintiff alleges neither element, and instead seeks "nonrestitutionary disgorgement of profits" that is "not recoverable in a UCL action." *Id.* at 157 (citation omitted).

Plaintiff's UCL claim fares no better on its merits. It fails generally because it targets non-commercial speech outside the UCL's reach (*see supra* at 5-6). Plaintiff claims California's common carrier statute as the sole ground for an unlawful-prong claim (Opp. at 14) but fails to allege a violation of that statute. (*See supra* at 4-5; Mot. at 15-16.) Plaintiff simply repeats the Complaint's conclusory assertions of unfairness, declining to engage with any of the applicable tests for the unfairness prong. (Opp. at 14.) And Plaintiff's fraudulent-prong theory must be dismissed based on Rule 9(b), which Plaintiff does not address, and because the Complaint nowhere alleges how "members of the public are likely to be deceived" by the statements he challenges.

---

[6] Plaintiff does not claim that he incurred such losses, so this defect is incurable. *See Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492, at *3 (N.D. Cal. July 1, 2010) ("[P]laintiff must explain what he can add to the complaint to overcome the fatal obstacles that exist.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

*Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160 (2000).

## VI.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS

Plaintiff does not dispute that he agreed to Terms permitting Twitter to terminate his account "for any or no reason." (Opp. at 16.) This alone mandates dismissal of his contract claim because "conduct authorized by a contract cannot give rise to a claim for breach of the agreement." *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015).[7]

Plaintiff argues that Twitter may only suspend his account if he in fact violated Twitter's COVID-19 misinformation policies. (Opp. at 14–15.) That is incorrect. Although Twitter determined that Plaintiff's Tweets violated its COVID-19 misinformation policy (*see* Mot. at 3), which is a ground for suspension under the Terms, Twitter also retained the broad contractual discretion to terminate "for any or no reason." This alone provides ample grounds to dismiss the contract claim. As courts have repeatedly explained, that a platform has offered up a series of illustrative guidelines for users does not displace or limit a broader contractual right to remove content at its discretion. (Mot. at 17 (citing cases).) Twitter likewise did not tie its own hands by providing a set of illustrative policies. *See Morton v. Twitter, Inc.*, 2021 WL 1181753, at *5 (C.D. Cal. Feb. 19, 2021) (dismissing breach of contract claim based on "Twitter's content-moderation policies," because "there is nothing to indicate that they are binding, as opposed to merely aspirational statements" and, further, "Twitter's terms of service specifically disclaim" liability).

Plaintiff also claims that Borrman's alleged statements to Plaintiff modified Twitter's contractual rights, abrogating Twitter's discretion. (Opp. at 18-19.) This is "a new theory to support [a] breach of contract claim" improperly made for the first time in a motion-to-dismiss opposition and "not pled in the operative complaint[.]" *Henrietta Mine, LLC v. A.M. King Indus., Inc.*, 2021 WL 4942880, at *4 (E.D. Cal. Oct. 22, 2021). Moreover, these alleged statements underlie Plaintiff's promissory estoppel claim; Plaintiff cannot make both claims based on the same

---

[7] *See, e.g., Daniels*, 2021 WL 1222166, at *8; *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021); *Cox v. Twitter, Inc.*, 2019 WL 2513963, at *4 (D.S.C. Feb. 8, 2019); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) ("defendants were given the right to do what they did by the express provisions of the contract there can be no breach" (citation omitted)); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) ("Assuming the complaint attempts to allege a breach of Facebook's [Terms], the [Terms] specifically reserved Facebook's right to 'reject or remove any ad for any reason[.]'"); *Song fi*, 108 F. Supp. 3d at 885.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-cv-09818-WHA

1  allegations. *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009). (*See*

2  Mot. at 19.) Plaintiff's modification theory also fails on its own terms. A "written provision[]" will

3  only be set aside "[w]here the subsequent conduct of parties is *inconsistent with and clearly*

4  *contrary* to provisions of the written agreement[.]" *Press Rentals, Inc. v. Genesis Fluid Sols., Ltd.*,

5  2014 WL 31251, at *7 (N.D. Cal. Jan. 3, 2014) (emphasis added). The bar is high: Plaintiff must

6  allege behavior "'antithetical' to a term in the original contract[]." *Cell-Crete Corp. v. Lexington*

7  *Ins. Co.*, 2014 WL 12601011, at *3 (C.D. Cal. July 30, 2014). Plaintiff has not pointed to a single

8  statement from Borrman "clearly contrary" or "antithetical" to Twitter's contractual right to remove

9  Plaintiff's content or suspend his account. (*See* ¶ 210.) Rather, Plaintiff alleges that Borrman told

10  Plaintiff to reach out to him if "action is taken" against his account, indicating that Twitter ***retained***

11  the ability to enforce its Terms. (¶ 110.) And *Wagner v. Glendale Adventist Medical Center*, 216

12  Cal. App. 3d 1379, 1390 (1989), cited by Plaintiff, likewise rejected an argument that plaintiff's

13  employer had modified her "at will" employment contract in the absence of antithetical behavior.[8]

14  　　*Facebook, Inc. v. Profile Technology, Ltd.*, 2014 WL 492369, at *3 (N.D. Cal. Feb. 5, 2014),

15  is particularly instructive. There, plaintiff argued that Facebook's contractual right to suspend

16  accounts "for any reason, or no reason" was "modif[ied]" because a Facebook employee had

17  previously given him permission, by email, as to the behavior that led to his suspension (i.e.,

18  gathering user data from Facebook's website). *Id.* at *1, *3. The court rejected the modification

19  theory because "nothing about that provision appears anywhere in the email exchange[.]" *Id.* at *3.

20  　　None of Plaintiff's other attempts to undo the parties' contract save his claim. First, Plaintiff

21  asserts that the "for no or any reason" clause is an "inequitable" "litigation-induced, post hoc

22  escape." (Opp. at 15.) Yet Plaintiff does not dispute that he is bound by the clause. (Opp. at 14–

23  15.) Nor is the clause "inequitable." *Murphy*, 60 Cal. App. 5th at 36 (Twitter terms "allowing it to

24  suspend or terminate users' accounts for any or no reason . . . do[] not shock the conscience or

25  appear unfairly one-sided."); *see Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *3 (N.D. Cal.

26  Dec. 2, 2015) ("[I]t is reasonable for [a platform] to retain broad discretion over [its] services[.]").

27

28  [8] As Twitter has explained, whether or not Twitter separately "inform[ed]" Plaintiff "it could suspend him for no or any reason" (Opp. at 15) is irrelevant. (Mot. at 18.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

Plaintiff's argument that Twitter's Terms are a "contract of adhesion" also is beside the point, as numerous courts have held in similar contexts. *See, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019); *Darnaa*, 2015 WL 7753406, at *3. This canon applies only if, after applying all other "rules of interpretation, there remains an uncertainty in the language of the contract[.]" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 397 (2008). But there is no "uncertainty" in Twitter's contractual right to suspend users "for any or no reason."

In a last-ditch effort, Plaintiff cites unpled allegations—what Twitter's policies said in 2009—to justify leave to amend. But amendment would be futile based on these allegations: Plaintiff does not dispute that his breach claim is based on Twitter's 2021 Terms and the COVID-19 misinformation policy. (¶¶ 132–133; Opp. at 14.)

## VII.   PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS ON MULTIPLE GROUNDS.

Plaintiff's promissory estoppel claim fails to plead an enforceable promise and reasonable reliance on that promise. It thus should be dismissed.

### A.   No Clear and Unambiguous Promise

Plaintiff's Opposition, like the Complaint, never once identifies the clear and unambiguous promise he seeks to enforce (¶ 210). Instead, Plaintiff objects that this Court should not "isolate[] relevant statements" but must consider "context" and "prior course of dealings[.]" (Opp. at 19–20.) Plaintiff's argument misconstrues the focus of the legal inquiry here. Promissory estoppel is meant to enforce a promise that would constitute a contractual obligation if not for lack of consideration. *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2012 WL 5447959, at *7 (C.D. Cal. Oct. 4, 2012). Context and course of dealing are thus of only limited use, such as to determine if ***reliance*** was reasonable— not whether a clear and unambiguous promise exists. *See, e.g.*, *Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*, 2012 WL 12884451, at *3 (C.D. Cal. Mar. 6, 2012). Context cannot create a clear and unambiguous promise. *See, e.g.*, *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185–86 (1999) ("[I]f extrinsic evidence" such as who made the promise, custom, and course of dealing, "is needed to interpret a promise, then obviously the promise is not clear and unambiguous."). This is because "prior course of dealing[]" does not plead "specific facts about what Defendants promised and when and to whom[.]" *TML Recovery, LLC v. Humana Inc.*, 2018 WL 8806104, at *3 (C.D. Cal.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

Nov. 26, 2018); *see also B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276, at *6 (N.D. Cal. Nov. 1, 2007) (plaintiff's plea that "essential terms may be determined by examining the long term course of dealing between the parties further confirms that the alleged promise itself is insufficient to define the essential terms").[9]

Plaintiff's assertion, then, that ambiguous statements made "over many months" **combined** to "assur[e] Mr. Berenson that he could continue reporting on the platform" fails to plead a clear and unambiguous promise. (Opp. at 20.) "[P]rovid[ing] a list of [numerous] events . . . that purportedly constitute Defendant's 'clear and unambiguous promise'" without identifying where, precisely, "Defendant actually promised Plaintiff" anything fails to state promissory estoppel. *Allergia, Inc. v. Bouboulis*, 2017 WL 2547225, at *6 (S.D. Cal. June 13, 2017); *see, e.g.*, *GoEngineer, Inc. v. Autodesk, Inc.*, 2002 WL 243603, at *7 (N.D. Cal. 2002) (assurances that company "looked 'forward'" to working with plaintiff and to "keep up the good work" not substitutes for "unambiguous statements" that plaintiff's contract "would be renewed").

Twitter's statement-by-statement analysis is the proper inquiry to determine whether the promissory estoppel claim can survive, and it shows that Twitter did not make a clear and unambiguous promise, let alone "a specific representation directly to [Plaintiff] that they would not remove content from their platform[.]" *Murphy*, 60 Cal. App. 5th at 39; (Mot. at 19–21). The cases Plaintiff cites in his Opposition (*see* Opp. at 19) further underscore what a "clear and ambiguous" promise looks like—an assurance that a person "will do . . . something," with a "scope of duty" and a "definite duration to perform" (Mot. at 19). *West*, 214 Cal. App. 4th at 789 ("If, **within thirty (30) calendar days** of receiving this information you provide us with evidence that any of these input values are inaccurate, and those inaccuracies are material . . . **we will conduct a new NPV evaluation**." (emphasis added)); *US Ecology, Inc. v. California*, 92 Cal. App. 4th 113, 123 (2001) ("[T]he State **will** use its best efforts to assure the **timely transfer of the relevant site** from the federal government to the State so as not to delay the issuance of the license **pursuant to the**

---

[9] Plaintiff distorts *West v. JPMorgan Chase Bank, N.A.*, which did not hold that the court must "read the complaint as a whole" to make inferential leaps between vague and unactionable individual statements (Opp. at 19), but rather found, unremarkably, it was no issue that the plaintiff failed to reproduce the quoted promises in the literal "promissory estoppel cause of action" section when he provided the statements elsewhere in the complaint.  214 Cal. App. 4th 780, 804 (2013).

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

1  ***proposed schedule*** of Facility development milestones contained in Exhibit C." (emphases added)).

2  Finally, Plaintiff cites "[i]f something happens, please let me know" as an alleged

3  "assurance" of "personalized . . . review[.]" (Opp. at 21.) But a representative's statement that he

4  "wanted to help Plaintiff" is not "a clear promise," as it does not "specify how" he would help,

5  *Kouretas v. Nationstar Mortg. Holdings, Inc.*, 2015 WL 1751750, at *3 (E.D. Cal. Apr. 16, 2015),

6  particularly since Borrman noted his limited authority (¶ 110). *Barnes v. Yahoo!, Inc.*, 570 F.3d

7  1096 (9th Cir. 2009) is inapposite. There, a Yahoo employee assured plaintiff that she would

8  "personally walk [plaintiff's] statements over to the division responsible for stopping unauthorized

9  profiles and they would take care it." *Id.* at 1099.[10] In doing so, the Yahoo employee made a

10  personalized assurance, with a defined scope and specific outcome.[11] Here, by contrast, Borrman's

11  alleged remark to "let me know" made no such guarantee, let alone one with specific time and

12  scope limitations.

13  **B.      No Reasonable Reliance**

14  Twitter's Motion provided three reasons why "no reasonable person would rely" on the

15  statements at issue (Opp. 19; *see* Mot. at 21–22.)  Plaintiff misconstrues or ignores each argument.

16  *First,* Plaintiff points to Borrman's noncommittal nicety that "[i]f something happens,

17  please let me know" as implying authority. (Opp. at 21 (citing ¶ 110).) It does not. A promise by a

18  corporate representative to "forward" an issue "to the appropriate department does not constitute a

19  promise" that the representative has authority. *Kouretas*, 2015 WL 1751750, at *3. And a plaintiff's

20  optimism is unfounded where he "knew that [his contact] lacked authority" to guarantee anything

21  given that the "very premise of their frequent discussions was the need to obtain the approval of" a

22  different department of the company. *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 64 (1988) (no

23  promise made by bank manager). Plaintiff's protest that Borrman cannot be analogized to "junior

24  employees" therefore misses the point (Opp. at 19): it is unreasonable to rely on the generalized

25  statements by ***any*** employee if the plaintiff knows the outcome was ultimately "outside of [the

---

[10] Contrary to Plaintiff's assertion that "Ninth Circuit held that statement alone was sufficient to
support a promissory estoppel claim" (Opp. at 20), the Ninth Circuit never reached the merits. *See
Barnes v. Yahoo!, Inc.*, 2009 WL 4823840, at *3 (D. Or. Dec. 11, 2009) (clarifying on remand).
[11] Plaintiff also points to a Twitter blog post as a promise "to the public." (Opp. at 18.) This material
is outside the Complaint and cannot support the claim. *Murphy*, 60 Cal. App. 5th at 38–39.

1    employee's] control." (Mot. at 21.)  Thus, even if Borrman offered to serve as a point of contact,[12]

2    it is unreasonable to interpret that as a "personalized route to review Twitter's enforcement

3    activities" (Opp. at 21), let alone that he had authority to exempt Plaintiff from Twitter's policies.

4        *Second*, Plaintiff has not pled reasonable reliance on Borrman's alleged statements, which

5    did not disclaim Twitter's right to act against his Tweets. (Mot. at 21–22; Opp. at 22.) "An email

6    from an interactive computer service provider indicating that a complaint by a defamed user will

7    be investigated is not a clear and definite promise to actually remove the content." *Obado v.*

8    *Magedson*, 612 F. App'x 90, 94 (3d Cir. 2015). Likewise, "[n]o plausible reading of the . . . general

9    statements" Plaintiff alleges "promises users that they will not have their content removed nor lose

10   access to their account based on what they post online." *Murphy*, 60 Cal. App. 5th at 39.

11       *Third,* Plaintiff does not dispute that his interpretation of Borrman's statements is

12   irreconcilable with Twitter's contractual right to remove content "for any or no reason." (Opp. at

13   22.) This contradiction between a user's belief and the underlying platform terms is dispositive;

14   "reliance on representations that contradict a written agreement is not reasonable." *Malmstrom v.*

15   *Kaiser Aluminum & Chem. Corp.*, 187 Cal. App. 3d 299, 319 (1986). Instead, Plaintiff reasserts

16   that the Terms were "modified." (Opp. at 22.) But this is a breach of contract argument, not

17   promissory estoppel. And as discussed above, Plaintiff's modification theory fails.[13]

18   **VIII.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM REMAINS FATALLY UNINTELLIGIBLE**

19       Plaintiff's attempt to salvage his unjust enrichment claim is indecipherable. As Plaintiff

20   describes it, Twitter unjustly enriched itself when it let Plaintiff stay on its platform for **too** long

21   after it should have suspended him. (Opp. at 22.) But Plaintiff has pled nothing supporting the

22   assertion that Twitter was **too lenient** with Plaintiff. Nor has Plaintiff ever plausibly pled Twitter

23

24   ---

     [12] To stave off dismissal with prejudice, Plaintiff again improperly invokes (inscrutable) allegations not in the Complaint—that because Borrman allegedly asked Berenson to avoid "dragging"

25   Twitter's then-CEO Jack Dorsey into his Tweets, Berenson understood Borrman to mean that he "spoke" for Mr. Dorsey, who had given his personal support to Berenson "to keep reporting." (Opp.

26   at 21–22.) This unpled, convoluted theory indicates neither that Borrman spoke for Mr. Dorsey, nor that Plaintiff was being offered personalized enforcement decisions contrary to Twitter's Terms.

27   [13] Plaintiff also has failed to plead any injury (Mot. at 18 n.9)—he presents "no evidence that [Twitter] caused Plaintiff to engage in conduct he otherwise would not have taken." *Faulks v. Wells*

28   *Fargo & Co.*, 231 F. Supp. 3d 387, 404–05 (N.D. Cal. 2017).  Merely speculating he would have considered an alternative course of conduct (Opp. at 17 n.6), does not suffice.

received a "benefit" from leaving him on its platform. *Maples v. SolarWinds, Inc.*, 50 F. Supp. 3d 1221, 1232 (N.D. Cal. 2014). It is illogical that Twitter letting Plaintiff stay on its platform longer than it should have led to the "unjust rejection of [a] benefit at the expense of" Plaintiff. *Id.*

## IX.   PLAINTIFF DOES NOT REBUT TWITTER'S FIRST AMENDMENT DEFENSE

Plaintiff does not meaningfully contest Twitter's First Amendment right to exercise editorial control over content on its platform; his only rebuttal is to misconstrue the Ninth Circuit's inapposite decision in *Twitter, Inc. v. Paxton*, 26 F.4th 1119 (9th Cir. 2022), *pet. for reh'g and reh'g en banc filed*, Dkt. No. 57 (Mar. 30, 2022). (*See* Opp. at 23.) The court in *Paxton* held that Twitter's challenge to a state attorney general's subpoena on First Amendment retaliation grounds was not prudentially ripe. *Id.* at 1129. The Ninth Circuit did not hold, as Plaintiff appears to suggest, that Twitter's content moderation decisions themselves were unprotected by the First Amendment. (Opp. at 23.) Consistent with this interpretation, a court in this District recently reaffirmed, after *Paxton*, that "[s]ocial media platforms have a First Amendment right to moderate content." *Huber*, 2022 WL 827248, at *6 (citation omitted); (see also Mot. at 23-24). And Plaintiff's contrary position directly contravenes Supreme Court precedent. *See Miami Herald*, 418 U.S. at 256.

## X.   PLAINTIFF FAILS TO REBUT TWITTER'S SECTION 230 DEFENSE

Plaintiff does not contest that Section 230 bars Claims I–IV, and VII, asserting instead that the statute "does not categorically bar" his "commercial tort, breach of contract, or promissory estoppel claims" claims (presumably including his unjust enrichment claim). (Opp. at 23.) But each of his claims, ***as pled***, is barred under Section 230(c)(1), because each of them "seek[s] to hold [an] interactive computer service[] liable for removing or blocking content or suspending or deleting accounts (or failing to do so)[.]" *Murphy*, 60 Cal. App. 5th at 27–28. As Judge Seeborg recently held, a claim that boils down to an "accus[ation]" against a social media platform "of utilizing its community standards to make classic publishing decisions" and choosing not to publish a user's post alleging a "conspiracy" in states' coronavirus responses is barred by Section 230(c)(1). Ex. A, *Atkinson v. Facebook Inc.*, No. 3:20-cv-05546, ECF No. 75 (N.D. Cal. Dec. 7, 2020). Moreover, Plaintiff makes ***no*** specific argument as to why his breach of contract or unjust enrichment claims are not barred by CDA 230. *See, e.g., Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *3–4 (N.D.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

Cal. June 10, 2019) (breach of contract); *Coffee*, 2021 WL 493387, at *6–8 (unjust enrichment).[14]

Plaintiff points to *Barnes* as barring the application of Section 230 to his promissory estoppel claim. (Opp. at 23.) *Barnes* is readily distinguishable (Mot. at 25). *Barnes* dealt with a "specific personal promise" unrelated to interpretation and enforcement of platform rules, that is, whether "Twitter . . . unfairly appl[ied] its general rules regarding what content it will publish[.]" *Murphy*, 60 Cal. App. 5th at 29; *see Obado v. Magedson*, 2014 WL 3778261, at *8 (D.N.J. July 31, 2014) (distinguishing *Barnes* and barring promissory estoppel claim where defendants allegedly "emailed Plaintiff indicating that they would investigate Plaintiff's complaints").

Plaintiff next argues that Twitter "label[ing] [his] [T]weets" is Twitter's ***own*** content, outside the realm of Section 230. (Opp. at 24.) But Claims I and III–VII make no mention of this label or allege damages as a result, challenging only Plaintiff's suspension. Plaintiff's Lanham Act claim does point to the label (¶ 166), but the claim falls apart on its merits. *See supra* at 5-6.[15]

Finally, Plaintiff cites the 1956 case of *Railway Employees Department v. Hanson*, 351 U.S. 225 (1956), arguing that Twitter's section 230 defense "raises First Amendment issues." (Opp. at 24.) Judge Chen rightly rejected this identical argument three weeks ago in *Huber*, holding: "Section 230 does not single out one kind of speech as suitable for private censorship" and "does not provide an independent basis" for a "First Amendment claim"; "the viability of the state action holding of *Hanson* is questionable"; and, in any event, Twitter's removal of content "is distinguishable from *Hanson*." 2022 WL 827248 at *9–10 (dismissing with prejudice).

Should the Court reach Section 230, it should hold that all of Plaintiff's claims are barred.

**XI.   CONCLUSION**

For the reasons above, the Court should grant Twitter's motion and dismiss with prejudice.

---

[14] Plaintiff argues that Twitter is obligated to meet the "good faith" requirement of Section 230(c)(2), which requires showing that Plaintiff's content was "objectionable for the reasons" Twitter gave. (Opp. at 24.) But Section 230(c)(1), which bars Plaintiff's claims, has no such good-faith requirement. *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011). As to Section 230(c)(2), a platform's removal of content pursuant to its guidelines is generally assumed in good faith absent "sufficient factual allegations" to the contrary. *Domen*, 433 F. Supp. 3d at 604. Plaintiff pleads no such allegations here.

[15] The Court need not reach Section 230 to dismiss the Lanham Act claim, but, as *Murphy* observes, Plaintiff's argument also fails under Section 230, whose protection extends to defendants that "developed, even in part, the content at issue," if the content is related to restricting or removing the content on its platform. 60 Cal. App. 5th at 32 (citing Section 230(c)(2)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA

1   Dated: April 6, 2022                              COOLEY LLP

2

3                                                     By: /s/*Kathleen R. Hartnett*

4                                                          Kathleen R. Hartnett

5                                                     Attorney for Defendant
                                                      TWITTER, INC.
6
    266223758
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TWITTER, INC.'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:21-CV-09818-WHA