UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEX BERENSON,

        Plaintiff,

  v.

TWITTER, INC.,

        Defendant.

No. C 21-09818 WHA

**ORDER RE MOTION TO DISMISS**

**INTRODUCTION**

In this free speech action, defendant banned plaintiff from its social media platform after he violated its five-strike COVID-19 misinformation policy. To the extent stated, defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Defendant Twitter, Inc. is a private company providing a social media platform that allows its users to post short messages for public discussion. Twitter's terms of service stated at all relevant times that it could suspend user accounts for "any or no reason" (Compl. ¶¶ 15, 22–23, 133).

Plaintiff Alex Berenson is an independent journalist. As alleged in the complaint, he gained notoriety through provocative statements he posted on Twitter regarding the public-health response to the COVID-19 pandemic. By May 2020, his tweets were the subject of

discussion for prominent public figures like Elon Musk and, as reported by the New York Times, senior White House officials (*id*. ¶¶ 1–2, 60, 64–66).

As the pandemic continued and to protect the public, Twitter began crafting specific community standards to limit COVID-19 misinformation on the platform. These content moderation policies included takedown procedures for, *e.g.*, ineffective treatments and false diagnostic criteria, as well as measures for "labelling" information as "misleading." The same day Twitter announced its labelling policy, May 11, 2020, plaintiff tweeted his concern regarding the risk of Twitter beginning to actively censor content. Hours later, Twitter's then-CEO Jack Dorsey began following plaintiff's account. And later that same day, Twitter's then-Vice President of Global Communications, Brandon Borrman, contacted plaintiff to open a direct line of communication with the company (*id.* ¶¶ 68–70, 73–74, 76, 80–81). When Twitter adopted standards regarding misleading statements on the COVID-19 vaccines, plaintiff reached out and received assurances from Vice President Borrman about how his tweets would be impacted by the policy. At this point, Twitter had not removed or labeled misleading any of plaintiff's tweets (*id.* ¶¶ 94–97, 102–03, 106).

Twitter announced a five-strike policy as part of its COVID-19 misinformation guidelines on March 1, 2021. Plaintiff again reached out to Vice President Borrman, who replied, "I will say that your name has never come up in the discussions around these policies," and that "[i]f it does I will try to ensure you're given a heads up before an action is taken, but I am not always made aware of them before they're executed. If something happens, please let me know" (*id.* ¶¶ 107–10). Twitter labeled as misleading five of plaintiff's tweets posted on March 15, May 29, and May 30, although none of these actions was called a strike on plaintiff's account. Although Vice President Borrman told plaintiff that he would look into the five labels, he did not respond further on the matter (*id.* ¶¶ 113–16).

On July 16, Twitter locked plaintiff's account for the first time. Plaintiff avers this constituted the second strike on his account. Twitter did not inform him what action constituted the first strike. Plaintiff received his third, fourth, and fifth strikes on July 27, July 30, and August 28, whereupon his account was permanently suspended (*id.* ¶¶ 127, 137, 139–

1   40, 144). Plaintiff says none of the tweets qualified as a strike under Twitter's stated rules.
2   Vice President Borrman never advised him that he was in any trouble. Plaintiff filed this
3   action in December 2021. Twitter now moves to dismiss. This order follows full briefing and
4   oral argument.

## ANALYSIS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

With the exception of the claims for breach of contract and promissory estoppel, all claims in this action are barred by 47 U.S.C. Section 230(c)(2)(A), which provides, "No provider or user of an interactive computer service shall be held liable on account of -- any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." For an internet platform like Twitter, Section 230 precludes liability for removing content and preventing content from being posted that the platform finds would cause its users harm, such as misinformation regarding COVID-19. Plaintiff's allegations regarding the lead-up to his account suspension do not provide a sufficient factual underpinning for his conclusion Twitter lacked good faith. Twitter constructed a robust five-strike COVID-19 misinformation policy and, even if it applied those strikes in error, that alone would not show bad faith. Rather, the allegations are consistent with Twitter's good faith effort to respond to clearly objectionable content posted by users on its platform. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009); *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 604 (S.D.N.Y. 2020) (Judge Stewart D. Aaron).

With regard to breach of contract and promissory estoppel, this order reads our court of appeals' *Barnes* decision to allow those claims to go forward despite Section 230, so long as they are properly pleaded under state law. At the hearing, Twitter emphasized *Barnes*' reasoning that "what matters is not the name of the cause of action," and that instead the

district court "must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Id.* at 1101–02. This order finds, however, that for these two claims plaintiff "does not seek to hold [Twitter] liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." *Id.* at 1107.

For an express contract, the course of performance "may supplement or qualify the terms of the agreement, or show a waiver or modification of any term inconsistent with the course of performance." *Emps. Reinsurance Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 920–21 (2008) (cleaned up). Specifically, conduct antithetical to a written term in a contract that induced the other party to rely on that conduct can amount to a modification of the contract. *See Wagner v. Glendale Adventist Med. Ctr.*, 216 Cal. App. 3d 1379, 1388 (1989). Here, Twitter allegedly established a specific, detailed five-strike policy regarding COVID-19 misinformation and its vice president gave specific and *direct* assurances to plaintiff regarding his posts pursuant to that policy. Any ambiguities in a contract like Twitter's terms of service are interpreted against the drafter, Twitter. *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016). And, at the pleading stage, this order must construe all allegations in the light most favorable to plaintiff's allegations. Plaintiff plausibly avers that Twitter's conduct here modified its contract with plaintiff and then breached that contract by failing to abide by its own five-strike policy and its specific commitments set forth through its vice president.

"The elements of promissory estoppel are (1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 929 (2013). The analysis here echoes that of the breach of contract claim. Twitter established a policy that set out standards for account suspension for posting COVID-19 misinformation. Twitter, through its vice president, also gave specific assurances to plaintiff that, among other things, it "would try to ensure you're given a heads up before any [enforcement] action is taken" (Compl. ¶ 210). Collectively, these actions plausibly qualify as a clear and unambiguous promise that Twitter would correctly apply its COVID-19 misinformation policy and try to give advance notice if it

4

suspended plaintiff's account. *See Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (2011). Twitter suspended plaintiff's account because he ostensibly violated the COVID-19 misinformation policy. These facts differ from other recent opinions on promissory estoppel where the pleading did "not allege[] Twitter ever made a specific representation directly to [plaintiff] or others that they would not remove content from their platform or deny access to their accounts." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 39 (2021); *see also King v. Facebook, Inc.*, —— F. Supp. 3d ——, 2021 WL 5279823, at *13 (N.D. Cal. Nov. 12, 2021) (Judge Edward M. Chen). Twitter's argument that plaintiff's reliance was unreasonable because the alleged representations contradicted a written agreement is inapposite given the explicit COVID-19 misinformation policy.

Aside from Section 230, plaintiff fails to even state a First Amendment claim. The free speech clause only prohibits government abridgement of speech — plaintiff concedes Twitter is a private company (Compl. ¶15). *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Twitter's actions here, moreover, do not constitute state action under the joint action test because the combination of (1) the shift in Twitter's enforcement position, and (2) general cajoling from various federal officials regarding misinformation on social media platforms do not plausibly assert Twitter conspired or was otherwise a willful participant in government action. *See Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020). For the same reasons, plaintiff has not alleged state action under the governmental nexus test either, which is generally subsumed by the joint action test. *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 n.13 (9th Cir. 2013). Twitter "may be a paradigmatic public square on the Internet, but it is not transformed into a state actor solely by providing a forum for speech." *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020) (cleaned up, quotation omitted).

Aside from Section 230, the Lanham Act claim also fails anyway. The Lanham Act "prohibits any person from misrepresenting her or another person's goods or services in 'commercial advertising or promotion.'" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114–15 (9th Cir. 2021) (quoting 15 U.S.C. § 1125(a)(1)(B)). Neither Twitter's labelling of

plaintiff's tweets, nor its statement regarding the suspension of his account plausibly propose a commercial transaction. *See United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). They are not advertisements, nor do they refer to a particular product, and the theory that Twitter's statements were made in the context in which plaintiff offers his services is too attenuated. *See Hunt v. City of L.A.*, 638 F.3d 703, 715 (9th Cir. 2011) (citation omitted). Applying common sense, this order concludes Twitter's warning labels and suspension notice constitute non-commercial speech aimed instead at promoting the veracity of tweets regarding COVID-19.

In light of Section 230's immunity, it is unnecessary to delve into the specifics of the common carrier law and the California free speech clause.

**CONCLUSION**

In sum, plaintiff's breach of contract and promissory estoppel claims survive for now. Plaintiff's other claims are futile and are **DISMISSED WITHOUT LEAVE TO AMEND**.

The Court finds that the following disclosures and discovery will efficiently tee this case up for cross motions for summary judgment and / or trial:

1. Both sides shall make their initial disclosures under Rule 26 within **14 CALENDAR DAYS**.
2. Also within **14 CALENDAR DAYS**, defendant shall specify what the five strikes were.
3. Each side shall produce all documents that fall within the scope of the categories it discloses under Rule 26 regardless of whether or not the party intends to rely on the documents. For example, if a party discloses "the customer file" then it must produce the entire file and not just those pages it intends to use in its case. This is due within **21 CALENDAR DAYS** (from today).
4. Plaintiff shall produce all texts, emails, voicemails, statements, and other documents by him pertaining to the termination of his Twitter account or the possibility thereof. This is not limited to communications with Twitter. If the document is a response to a message from someone else, then that message must also be produced. The deadline for this production shall be **JUNE 6**.

5. Defendant shall produce all texts, emails, voicemails, statements, and other documents pertaining to plaintiff, including but not limited to nonparty complaints or inquiries about plaintiff and / or including possible or actual termination of his account or a strike against his account or a labeling of any of his posts. Given the likelihood of a greater number of relevant documents in defendant's possession on this topic, the deadline for this production shall be **JUNE 20**.

6. Privilege logs must be immediately supplied for any materials withheld on any ground of privilege. Privilege logs will be provided the same date as the document production.

7. Plaintiff shall sit for a single deposition up to seven hours. This must be completed before any depositions of defendant. Then plaintiff may depose up to two Twitter employees or former employees for a total of seven hours. The deadline for plaintiff's deposition shall be **JUNE 27**. The deadline for the completion of defendant's witnesses shall be **JULY 14**.

8. Until further order, no other discovery may be taken. The foregoing is without prejudice to further deposition of the same witnesses and parties in later discovery. Counsel may agree in a stipulation promptly filed herein to modest adjustments of the foregoing deadlines and obligations. Based on what the foregoing discovery shows, by **JULY 21**, counsel shall propose a further phase of discovery and / or summary judgment motions.

**IT IS SO ORDERED.**

Dated: April 29, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE